**HUFF ET AL., APPELLEES, *v.* FIRSTENERGY CORP. ET AL.;**

**OHIO EDISON COMPANY ET AL., APPELLANTS.**

**[Cite as *Huff v. FirstEnergy Corp.,* 130 Ohio St.3d 196, 2011-Ohio-5083.]**

*Contracts—Third-party beneficiaries—For an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party.*

(No. 2010-0857—Submitted May 24, 2011—Decided October 5, 2011.)

APPEAL from the Court of Appeals for Trumbull County,

No. 2009-TR-00080, 2010-Ohio-1456.

_____

**SYLLABUS OF THE COURT**

For an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party.

_____

**LANZINGER, J.**

{¶ 1} This discretionary appeal was accepted in a personal-injury case involving a summary judgment that was reversed by the Eleventh District Court of Appeals. We are asked to determine whether a person injured by a falling tree located near, but outside, the utility's easement is an intended third-party beneficiary of a contract between a utility and its service contractor. We hold that under the facts of this case, a contract between a utility and a contractor that provides that "[t]he Contractor shall plan and conduct the work to adequately safeguard all persons and property from injury" does not create a duty on the part

of the contractor, once the work has been completed, to protect a third party from injury.

## I. Case Background

{¶ 2} In June 2004, appellee Lisa G. Huff was injured during a walk along Kings Grave Road in Hartford Township. She alleges that during a heavy thunderstorm, a large sugar maple tree split in two approximately 25 feet above the ground, and a large limb from the tree struck her, causing serious and permanent injuries. The tree was located on property owned by Gerald and Michelina Braho and stood about 30 feet from the center of Kings Grave Road and 20 feet from utility lines owned and maintained by appellant Ohio Edison Company, a subsidiary of FirstEnergy Corp.

{¶ 3} Ohio Edison maintained an easement near the tree, but the tree was outside the easement. The tree did not present a hazard or threat to the power lines. Ohio Edison had hired appellant Asplundh Tree Expert Company to inspect trees and vegetation along its power lines in this area and to remedy any situation in which trees or vegetation might affect the lines. Ohio Edison and its contractors carry out this work to ensure that adequate clearance is maintained around electric lines. Generally, Ohio Edison deferred to Asplundh's decisions regarding tree and vegetation maintenance and would perform an overview inspection of the electrical circuit only to determine whether any vegetation was growing into the electrical wires or equipment. Asplundh had last been in the area where Huff's injury occurred in May 2001.

{¶ 4} Huff, along with her husband, Reggie D. Huff, and children filed suit against Ohio Edison and Asplundh, as well as FirstEnergy[1] and the Brahos.[2]

---

1. The court of appeals concluded that FirstEnergy is merely a holding company that owns Ohio Edison and that it did not exercise any control or supervision over Ohio Edison's day-to-day practices for clearing vegetation. The court of appeals accordingly concluded that the trial court properly granted summary judgment in FirstEnergy's favor. The Huffs did not appeal the judgment in favor of FirstEnergy.

The Huffs alleged that Ohio Edison and Asplundh were liable for Huff's injuries based upon their failure to inspect, maintain, and remove the tree or to warn the landowner and the public of the danger raised by the tree.[3]

{¶ 5} Ohio Edison and Asplundh filed motions for summary judgment. Ohio Edison argued that it had no prior knowledge that the tree was dangerous, that it owed and assumed no duty to Huff regarding the tree, and that it was not negligent and did not proximately cause or contribute to Huff's injuries. Asplundh argued that it owed no duty to Huff and that its activities did not proximately cause the injury to Huff. The Huffs responded that Ohio Edison had contracted with Asplundh to inspect and maintain trees within the easement and that Asplundh failed to recognize that the tree in question was diseased and a hazard and failed to remove the tree when it was on site in May 2001. The Huffs also argued that Ohio Edison was responsible for maintaining trees within and around its easement, that Ohio Edison was aware of the tree based upon its location within an inspection zone, and that Ohio Edison had a duty to remove the diseased tree.

{¶ 6} The trial court found that while the tree leaned approximately ten degrees away from the power lines, "there is absolutely no credible evidence about when the tree began to lean or if it was leaning because of the way it grew." It also noted that one of the Huffs' experts admitted that he could not testify to a reasonable degree of probability as to when the tree became a hazard. Finding no evidence that Ohio Edison or Asplundh actually inspected the tree or removed any branches, the court concluded that the Huffs failed to show that appellants ever had actual or constructive notice of any decay of the tree. The court found that

---

2. The Huffs subsequently dismissed the Brahos from the case.

3. While the Huffs did not explicitly aver their status as third-party beneficiaries in the complaint, they generally referred to contractual duties owed by Ohio Edison to the public to inspect, prune, and maintain trees along its power lines.

due to the tree's location—leaning away from the power lines with no limbs near the power lines—Ohio Edison and Asplundh owed no duty to the Huffs. With respect to Ohio Edison, the court also found that "Ohio Edison * * * did not have actual or constructive notice of any defects in this tree located on someone else's property" and that there was a "complete lack of any evidence that * * * Ohio Edison had any notice whatsoever that the interior of one tree on a rural township road was decaying." After examining the contract between Ohio Edison and Asplundh, it concluded that the Huffs were not third-party beneficiaries under the contract. It accordingly granted appellants' motions for summary judgment.

{¶ 7} On appeal, the Huffs argued that the trial court erred when it found that Ohio Edison and Asplundh had no duty to Lisa Huff. Before considering whether appellants had a duty under the contract, the court of appeals first determined that no duty under traditional tort law existed: "The duty analysis in this case * * * does not turn on the foreseeability of the danger which caused [Huff's] injury. Rather, it turns on the language of the contract into which Ohio Edison and Asplundh entered." Trumbull App. No. 2009-T-0080, 2010-Ohio-1456, at ¶ 52. As a result, it examined the contract between Ohio Edison and Asplundh and held that there was a genuine issue of material fact regarding whether Huff had enforceable rights under the contract as an intended third-party beneficiary. Id. at ¶ 62. In reaching this conclusion, the court stated that a portion of the contract providing that "[Asplundh] shall plan and conduct the work to adequately safeguard all persons and property from injury" could be read in two ways: (1) a narrow reading that provides Asplundh must protect all persons from injury while Asplundh works on the site or (2) a broad reading that requires Asplundh to protect all persons from injury at all times, regardless of when the work is done. Id. at ¶ 60-61. The court accordingly held that the contract was ambiguous and reversed the trial court's grant of summary judgment to Ohio Edison and Asplundh. Id. at ¶ 61-64.

**{¶ 8}** We first denied jurisdiction in this case. 126 Ohio St.3d 1546, 2010-Ohio-3855, 932 N.E.2d 340. On reconsideration, we granted jurisdiction on all propositions of law raised by Ohio Edison and Asplundh. 126 Ohio St.3d 1620, 2010-Ohio-5101, 935 N.E.2d 856.

## II. Analysis

**{¶ 9}** Ohio Edison's and Asplundh's propositions of law raise a number of challenges to the court of appeals' holding that they owed a duty to the Huffs as intended third-party beneficiaries of the contract between Ohio Edison and Asplundh. Because we hold that the contract between Ohio Edison and Asplundh did not create any duty to the Huffs as third-party beneficiaries, we reverse the judgment of the court of appeals.

**{¶ 10}** In *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780, we adopted the statement of law in Restatement of the Law 2d, Contracts (1981), Section 302. Section 302(1)(b) provides that "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and * * * the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Comment *e* to Section 302 limits the creation of duties to third parties: "[U]nless the third person is an intended beneficiary as here defined, no duty to him is created."

**{¶ 11}** In applying this rule, we referred to *Norfolk & W. Co. v. United States* (C.A.6, 1980), 641 F.2d 1201. We adopted language from *Norfolk & W. Co.* explaining the "intent to benefit" test, which is used to determine whether a third party is an intended beneficiary of a contract: " 'Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no

enforceable rights under the contract.' " *Hill* at 40, quoting *Norfolk & W. Co.* at 1208.

{¶ 12} Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement. *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." Id. at syllabus. Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement.

{¶ 13} The facts in this case do not show that the agreement between Ohio Edison and Asplundh was intended to benefit the Huffs. The court of appeals and the Huffs point to one specific portion of the contract that they argue creates a genuine issue of material fact regarding whether Lisa Huff has an enforceable right under the contract. This statement, which is found in an attachment entitled "FirstEnergy Vegetation Management Specifications" and incorporated into the Ohio Edison-Asplundh contract, provides that "[t]he Contractor shall plan and conduct the work to adequately safeguard all persons and property from injury." The Huffs contend that this statement distinguishes their case from *Hill* and *Norfolk & W.* because it assigns to both Ohio Edison and Asplundh clearly defined duties—to safeguard the public—for the Huffs' benefit.

{¶ 14} When this statement is placed in context, however, it is clear that neither Ohio Edison nor Asplundh intended to make the Huffs third-party beneficiaries under the contract. The contract was not entered into for the general benefit of the public walking on public roads. It was designed to support the electrical service offered by Ohio Edison. The contract states that it applies to

work, consisting of "tree trimming, tree removal, clearance of rights-of-way using either manual or chemical methods, and disposal of trees and brush," completed by Asplundh on behalf of Ohio Edison. The purpose of the contract, then, is to ensure that Ohio Edison's equipment and lines are kept free of interference from trees and vegetation. The remainder of the contract sets forth how this work is to be carried out, such as the standards by which Asplundh is to perform its work, the limits on liability for the performance of the work, and the necessary qualifications for the Asplundh employees who were to perform the work. The contract contains no language establishing an ongoing duty to the general public on behalf of either Ohio Edison or Asplundh.

{¶ 15} The document on vegetation management incorporated into the contract provides that "[t]he objective of all work covered by these documents is to maintain reliable and economical electric service, through effective line clearance and satisfactory public relations." A portion of that document sets forth safety standards for Asplundh to follow while it is on site:

{¶ 16} "SAFETY PRECAUTIONS AND PROTECTION TO PROPERTY

{¶ 17} "The Contractor shall plan and conduct the work to adequately safeguard all persons and property from injury.

{¶ 18} "The Contractor shall take the necessary precautions to render the Work secure in order to decrease the probability of accident from any cause and to avoid delay in completion of Work. The Contractor shall use proper safety appliances and provide first aid treatment and ambulance for emergency treatment of injuries and shall comply with all applicable Federal, State and Local Laws, rules and regulations with regard to the safe performance of the work."

{¶ 19} Working near electrical lines has its inherent hazards. It is clear that this portion of the agreement establishes safety guidelines designed to protect persons and property from injury while the contractor performs its work. This

period is finite: until the work has been completed. Contrary to the assertion of the court of appeals, the agreement cannot be plausibly read to require Ohio Edison or Asplundh to safeguard *all* persons from injury at all times, regardless of when the work is completed.

{¶ 20} Even if the Huffs were able to show that at some point in time, members of the public using the road near the power lines might receive incidental or indirect benefits from the agreement, this would not satisfy the burden of proof established in *Hill*. See *Terry v. Hancock-Wood Elec. Coop., Inc.*, Erie App. No. E-08-060, 2009-Ohio-4925, at ¶ 29. The agreement does not indicate that either Ohio Edison or Asplundh intended to give the general public the benefit of a promise to perform. The Huffs thus fail to qualify as intended third-party beneficiaries, and the court of appeals improperly reversed the summary judgment granted to Ohio Edison and Asplundh.

{¶ 21} It should be noted that while there is no contractual duty on behalf of Ohio Edison or Asplundh toward the Huffs, this fact did not preclude the Huffs from showing that appellants owed them a duty under traditional principles of tort law. Indeed, during oral argument, the Huffs' counsel proposed that either Ohio Edison or Asplundh had caused damage, at some unspecified time, to the tree that struck Lisa Huff, and thus that appellants had a duty to make the tree safe for the general public. Counsel admitted, however, that the Huffs had no direct evidence to support this theory. In fact, the trial court found that the Huffs failed to show that either Ohio Edison or Asplundh was on notice of any decay in the tree when Asplundh was on the site in 2001. Furthermore, the Huffs failed to preserve this issue on appeal.[4]

---

4. We decline to address the specific issues contained within Ohio Edison's third proposition of law and Asplundh's fourth proposition of law, both of which propose general rules for contract interpretation that are rendered irrelevant to this case, given our holding that the Huffs are not intended third-party beneficiaries as defined by Ohio law. Furthermore, because the court of appeals limited its analysis to whether the Huffs are intended third-party beneficiaries under the

### III. Conclusion

{¶ 22} We hold that for an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party. Because the contract between Ohio Edison and Asplundh does not indicate an intent to benefit the Huffs, the trial court properly granted summary judgment to Ohio Edison and Asplundh. We therefore reverse the judgment of the court of appeals.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in judgment only.

_____

**O'DONNELL, J., concurring in judgment only.**

{¶ 23} The issue in this case is whether Ohio Edison and Asplundh Tree Expert Company intended to make Huff and other members of the public third-party beneficiaries of a contract that required Asplundh to conduct its work in a manner that adequately safeguarded "all persons" from injury. I agree with the majority that the parties did not intend to make Huff a third-party beneficiary of the contract and that she may not bring a claim against Ohio Edison or Asplundh for breach of that contract. However, I concur in judgment only because, in my view, the majority creates a new requirement that the intention to benefit a third party must be indicated in the terms of the contract. This is not the law in Ohio.

{¶ 24} In *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780, we adopted the test found in the Restatement of the Law 2d,

---

contract, we also decline to address Asplundh's first proposition of law, which addresses whether a utility or its contractor has a general duty to protect the public from trees that are not located on utility property or within a utility easement and do not pose a threat to utility equipment.

Contracts (1981), to define the duty that the parties to a contract owe to a third-party beneficiary. Quoting Section 302 of the Restatement, we stated:

{¶ 25} " '(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

{¶ 26} " '(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

{¶ 27} " '(b) *the circumstances indicate* that the promisee intends to give the beneficiary the benefit of the promised performance.' " (Emphasis added.) *Hill* at 40.

{¶ 28} Contrary to the holding of the majority as expressed in the syllabus in this case, the plain language of Section 302 of the Restatement does not require the parties to a contract to indicate their intention to benefit a third party in the terms of the contract. As Professor John E. Murray Jr. explains in Corbin on Contracts, "The critical right of a third party is the right to sue the promisor. [However], the promisor and promisee will almost never state that intention explicitly. Nonetheless, the critical test is whether the language of the contract, the extrinsic evidence interpreting that language and all of the surrounding circumstances manifest an intention by the promisee and promisor to confer that right on the third party. If so, it is 'appropriate' for a court to recognize that right in the third party." (Footnotes omitted.) 9 Corbin on Contracts (2007) 65-66, Section 44.6.

{¶ 29} Thus, courts applying the same Restatement test that we adopted in *Hill* recognize that " '[a] court in determining the parties' intention should consider the circumstances surrounding the transaction as well as the actual language of the contract.' " *Subaru Distribs. Corp. v. Subaru of Am., Inc.* (C.A.2, 2005), 425 F.3d 119, 124, quoting Restatement Section 302, Reporter's Note,

comment *a*; see also *Pub. Serv. Co. of New Hampshire v. Hudson Light & Power Dept.* (C.A.1, 1991), 938 F.2d 338, 342; *Beverly v. Macy* (C.A. 11, 1983)*,* 702 F.2d 931, 940; *Hickman v. SAFECO Ins. Co. of Am.* (Minn.2005), 695 N.W.2d 365, 370; 13 Lord, Williston on Contracts 67-68, Section 37:8 (noting that most jurisdictions follow this rule).   As the Eleventh Circuit Court of Appeals explained in *Beverly*, "when determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation."  702 F.2d at 940.

{¶ 30} We have never held that the intention to benefit a third party must be indicated in the contract.  In fact, the court in *Anderson v. Olmsted Util. Equip., Inc.* (1991), 60 Ohio St.3d 124, 573 N.E.2d 626, looked both to the terms of the contract and to extrinsic evidence of the intent of the parties to determine whether third parties could enforce the contract.  In that case, the city of Niles had contracted with Olmsted Utility Equipment to inspect and repair the hydraulic arm of the city's "cherry picker" truck before remounting it on a new truck.  Anderson and Carlson, electrical linemen employed by the city, were subsequently injured when the arm failed and they fell to the ground.  They sued Olmsted Utility Equipment, asserting that it had breached the express warranty made to the city.

{¶ 31} We rejected the argument that Anderson and Carlson were at most incidental beneficiaries of the contract, stating:

{¶ 32} "[I]n this case, it is clear to us that the city, as promisee, intended that Anderson and Carlson benefit from the contract. The specific terms of the contract provided that '[t]he City of Niles is interested in having this equipment rebuilt to 100% Holan specifications and *safety.*' (Emphasis added.)  In addition, when questioned at trial concerning the inspection and rebuilding of the aerial device, Charles Burgess, the superintendent of the city's light department, testified

that the purpose of rebuilding the aerial device was for safety of linemen who were to use the truck.

{¶ 33} "Indeed, Anderson and Carlson were not merely incidental beneficiaries but were, in all respects, intended beneficiaries under the contract." *Anderson*, 60 Ohio St.3d at 130, 573 N.E.2d 626.

{¶ 34} Accordingly, the rule is not that "the contract must indicate an intention to benefit [the] third party." Majority opinion at the syllabus. Rather, the test is whether " 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and * * * the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " *Hill*, 36 Ohio St.3d at 40, 521 N.E.2d 780, quoting Restatement, Section 302.

{¶ 35} Here, the language of the contract and the circumstances surrounding its formation do not show that either Ohio Edison or Asplundh intended to give Huff the benefit of the promised performance. Since Huff is not a third-party beneficiary of the contract, she had no right to enforce its performance. I therefore agree with the majority that the court of appeals' judgment should be reversed because Huff is not a third-party beneficiary of the contract. However, because the majority modifies the third-party beneficiary rule in Ohio by requiring that the contract—rather than the surrounding circumstances—indicate an intention to benefit a third party, I concur in its judgment but not its statement of law.

PFEIFER, J., concurs in the foregoing opinion.

_____

Betras, Kopp & Harshman, L.L.C., and David Betras, for appellees.

Harrington, Hoppe & Mitchell, Ltd., and John T. Dellick, for appellant Ohio Edison Company.

Reminger Co., L.P.A., Clifford C. Masch, Brian D. Sullivan, and Martin T. Galvin, for appellant Asplundh Tree Expert Company.

_____