[Cite as *Coman v. Coman*, 2016-Ohio-464.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CAROLYN COMAN, | ) | CASE NO. 15 MA 64 |
| | ) | |
| THIRD PARTY PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| STEVEN COMAN, | ) | |
| | ) | |
| THIRD PARTY DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 12CV666

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Daniel P. Thomas
DelBene, LaPolla & Thomas
155 Pine Avenue, N.E.
P.O. Box 353
Warren, Ohio 44482

For Defendant-Appellee:      Atty. Matthew C. Giannini
1040 South Commons Place
Suite 200
Youngstown, Ohio 44514

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: February 2, 2016

ROBB, J.

{¶1} Plaintiff-Appellant Carolyn Coman appeals the decision of the Mahoning County Common Pleas Court ruling in favor of Defendant-Appellee Steven Coman. Appellant argues the court erred in failing to issue a declaratory judgment finding that she is entitled to free gas for her dwelling under an oil and gas lease signed by her grandparents in 1968. However, Appellant's two acres were conveyed by her grandparents to her parents in 1951, and thus, her acreage was not part of the leasehold. She alternatively states the trial court should have found that her grandparents intended her parents to have free gas for the dwelling she now owns and should have applied broad equity principles of fairness to provide her with the right to free gas under the lease. The trial court's decision is supported by the evidence. The judgment in favor of Appellee is affirmed.

STATEMENT OF THE CASE

{¶2} Appellant and Appellee are siblings. In 1948, the parties' grandparents, Lew and Ann Coman, purchased 137.68 acres in Berlin Township. (The deed showed the transfer of three parcels containing 40.68, 35, and 62 acres.) There was no dwelling on the property at the time. In 1951, the grandparents transferred two acres of this property to the parties' parents, Robert and Anabelle Coman, who built a house on their property that same year.

{¶3} On November 19, 1968, the grandparents executed an oil and gas lease in favor of Quaker State Oil Refining Corporation. The lease stated that it covered two tracts of land totaling 220 acres "more or less." The lease described Tract #1 as consisting of 83 acres (in a Lot number that was not part of the 1948 purchase). The lease described Tract #2 as consisting of 137 acres and listed Lot numbers that correspond to the parcels making up the 1948 purchase. The lease provided in pertinent part: "Lessor shall have gas free of cost for use in the principal dwelling on said land by making his own connections at his own risk and expense with any producing gas well on the above described premises."

{¶4} A gas well was drilled on the grandparents' land in the mid-1970's. In 1979, the grandparents transferred to Appellee 5.194 acres (from their 1948

purchase). In 1980, the grandparents transferred their remaining 130 plus acres (from the 1948 purchase) to Appellee but provided life estates in this property to their children, Robert Coman (the parties' father) and Frances Coman (the parties' aunt). (The parties' aunt transferred her interest to Appellee as the remainderman in 1982, and the parties' father, joined by his wife, transferred his interest to Appellee in 1994).

{¶5} Appellee states that he connected a gas line from the well to his dwelling in 1980. Later that year or in 1981, a separate gas line was connected to the house of the parties' parents. In 1995, the parents transferred their two-acre lot and house to Appellant, who lived with them, reserving a life estate for the father who died in 2006. (The parties' mother died in 2008.) On June 25, 2010, Appellee disconnected the gas line running to Appellant's house.

{¶6} On October 11, 2013, Appellant filed a declaratory judgment action against Appellee asking the court to rule that her house at 13996 Berlin Station Road is the principal dwelling entitled to receive free gas under the 1968 oil and gas lease. She pointed out that the house received free gas for twenty-nine years before Appellee disconnected the gas line. She asked for damages as she converted her appliances to electric and her furnace to propane and her expenses have increased as a result. She attached the oil and gas lease and various deeds related to the history of the property.[1]

{¶7} Appellee filed a counterclaim asserting Appellant's claim was frivolous and seeking sanctions and damages. Appellee then filed a motion for summary judgment arguing that the lease and the chain of title shows the oil and gas lease is inapplicable to the two acres owned by Appellant as their grandparents did not own those two acres at the time they signed the lease. The motion suggested the gas line was installed due to familial affection, not due to a lease obligation. He attached his

---

[1] Appellant's complaint was actually a third-party complaint filed after she was permitted to intervene in an action wherein Steven and Linda Coman (as the sellers of property at 14020 Berlin Station Road) filed suit against Deborah and Brian Benyo (the buyers of the property) and Title Works Agency, L.L.C. That portion of the case was settled after a new deed was recorded to include the language in the purchase agreement showing the sellers reserved the mineral rights, their rights under an existing oil and gas lease, and an easement for a gas line from the well to the seller's house at 14360 Berlin Station Road.

own affidavit and documents showing the history of the property. He said he personally excavated the gas line from the well on his property to his house in 1980 and installed a separate line to his parents' house soon thereafter. He explained: "since then the well resources have been considerably depleted. I have experienced significant interruptions in the supply to my own dwelling and as a result I have been forced to terminate the gas line to my sister's dwelling on her adjacent property."

{¶8} Appellant filed a response urging that the lease language granting the right to free gas "for use at the principal dwelling" was a reference to her residence as it was the only one in existence at the time the lease was executed. She pointed out that the lease was expressly said to cover 137 acres, and her grandparents owned 137.68 acres *before* they transferred the two-acre parcel to her parents. She alternatively asked the court to apply broad equitable principles of fairness. Appellant attached an affidavit stating that the gas line was connected to her house by her parents in 1981; she contested Appellee's statement that he installed the line to her house and said her father paid someone else to do the job. Appellant also provided a May 18, 2010 letter from Appellee advising that he was going to disconnect her gas line; she noted that the letter did not mention depletion issues and suggested his motive for the disconnection was to retaliate for a certain action she took against him.

{¶9} On September 8, 2014, the trial court denied Appellee's request for summary judgment and set the case for trial. When the case was called for trial, the parties said the evidence at trial would be the same as that presented in the summary judgment stage and agreed to allow the court to decide the case based upon the filings and exhibits in lieu of trial.

{¶10} On April 1, 2015, the trial court ruled in favor of Appellee and dismissed Appellant's complaint. The court found that the undisputed chain of title resolved the case. The court concluded: although the oil and gas lease referred to 137 acres, the lessor-grandparents did not own Appellant's two acres in 1968 when they signed the lease; the lessors could not encumber land they did not own; the leasehold never included Appellant's two acres, and thus, it was irrelevant that Appellant's dwelling existed in 1968 while the lessors had no dwelling on their acreage; the lease provides

the "Lessor" is entitled to free gas; the owners of Appellant's two acres were not the lessors under the lease; and there was no indication the lessors ever lived in the house on the two-acre parcel.

**{¶11}** Appellant filed the within appeal on April 27, 2015, after the parties dismissed any pending claims and counterclaims with prejudice. Appellant raises one assignment of error, setting forth a legal argument and an equitable argument thereunder.

### ASSIGNMENT OF ERROR

**{¶12}** Appellant's sole assignment of error provides:

"The Trial Court's decision in denying Appellant's Complaint for Declaratory Judgment and Damages constitutes reversible error."

**{¶13}** As aforementioned, Appellant asked for a declaration that she was entitled to free use of gas under the 1968 oil and gas lease as her house was the "principal dwelling" referred to in the lease. A person interested under a written contract or whose rights, status, or other legal relations are affected by a contract may seek a declaration of their rights by asking a court to determine any question of construction or validity arising under the instrument. R.C. 2721.03.

**{¶14}** Appellant points out that her residence was the only dwelling at the time of the lease. She notes that she received free gas from 1981 until 2010 (although Appellee began receiving free gas from his connection just prior to her connection). Appellant claims the lease "explicitly" includes her two acres as her lot is contained in Lot 29 of Tract 3. Appellant cites no case law to support her position that her parents' land was included in her grandparents' oil and gas lease even though it was transferred to the parents seventeen years prior to the grandparents' signing of the lease.

**{¶15}** In describing the leasehold property, the 1968 oil and gas lease provides in pertinent part: "Tract #2 (137 acres, m/1, in Lots 25, 26 & 29, Tract 3, Twp. 1, Range 5)." Contrary to Appellant's suggestion, the lease does not explicitly refer to her two acres merely because her land is part of Lot 29 in Tract 3. The grandparents owned 73.68 acres in that territory at the time they signed the lease.

Furthermore, the fact that the lease described Tract #2 as containing 137 acres instead of 135.68 acres is not dispositive. This difference is small, and the total amount of acreage in the lease is introduced and modified by the phrase "more or less."

**{¶16}** A contracting parties' intent generally resides in the language the parties chose to use in the agreement. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Id.* at syllabus. For a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party, which will generally be found in the language of the agreement. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12.

**{¶17}** Appellee urges that since the original leasehold could not include Appellant's two-acre parcel, it is axiomatic that the oil and gas lease has no application to Appellant's interest in her acres. Appellee asserts that it is irrelevant that there was no dwelling on the grandparents' land, but there was a dwelling on the land belonging to Appellant's parents, at the time the grandparents executed the 1968 oil and gas lease.

**{¶18}** The chain of title controls what property is subject to the lease. *See, e.g., Petty v. Equitable Prod. & E. States Oil & Gas, Inc.*, 7th Dist. No. 05MA80, 2006-Ohio-887, ¶ 31, 34 (if the lessor did not own the 5.349 acre parcel at the time they entered the lease, that parcel is not part of the leasehold tract and the dwelling on that parcel could not be one of the three dwellings entitled to receive free gas under the lease). "A free gas clause, limited to the principal dwelling, limits the right to receive free gas to only one house on the leased premises." *Sethi v. Antonucci*, 126 Ohio App.3d 382, 386, 710 N.E.2d 719 (7th Dist.1998). The question here is which house has that right. Notably, the case at bar is not one involving a subdivision of leased land after the lease is signed. *Compare id.* Rather, Appellant's

two acres were severed from the grandparents land long before the grandparents signed the oil and gas lease.

{¶19} That is, the two-acre parcel had been deeded to Appellant's parents in 1951. All of the Tract #2 land the grandparents owned at the time of the 1968 oil and gas lease is now owned by Appellee. A gas well was drilled on the grandparents' land in the mid-1970's. Appellee made the first connection to the well in 1980 to his residence, which was located on the land owned by the grandparents at the time of the 1968 lease. Although his parents subsequently connected their house to the well, Appellee's residence was the only one located on the leasehold estate. As the trial court observed, the installation of a line to a house outside of the leasehold does not change the terms of the lease, which covers only the property owned by the lessors. *See Petty*, 7th Dist. No. 05MA80 at ¶ 3, 31, 34 (the fact that one lessor ran a gas line to a dwelling on later-acquired property does not change the lease terms which cover the property owned by the lessors at the time of the lease).

{¶20} As the grandparents did not own Appellant's two-acre parcel at the time of the 1968 oil and gas lease, the grandparents could not encumber the two-acre parcel by signing a lease. The lease covered only land owned by the grandparents, who signed the lease as the lessors. *See Petty*, 7th Dist. No. 05MA80 at ¶ 30-31 (although the right to free gas runs with the surface estate of the dwelling {unless stated otherwise}, the focus must remain on the surface estate of the dwelling *located on the leasehold tract*).

{¶21} Moreover, the lease specifically provides free gas to the "Lessor" for use in the principal dwelling on the leasehold. Although Appellant's parents promptly built a house when they received the two acres in 1951, the 1968 lease covers land owned by the lessors under the lease, and Appellant's parents were not lessors. The lease was signed only by the grandparents; they were the lessors entitled to free gas under the lease for a dwelling on their land.

{¶22} Besides arguing the lease expressly includes her two acres and she is legally entitled to free gas, Appellant alternatively urges that equity and fairness support her position. Appellant states that when the rights of parties are clearly

defined and established by law, the courts usually apply the maxim "equity follows the law," but where the parties' rights are not so clearly delineated, the courts can apply "broad equitable principles of fairness." *Citing Blackwell v. International Union, United Auto Workers Local No. 1250*, 21 Ohio App.3d 110, 112, 487 N.E.2d 334 (8th Dist.1984). Appellant also quotes the maxim, "equity regards substance rather than form," and urges the intent of her grandparents is the substance and the lease is merely the form. She mentions that equity can be invoked to grant relief from mistake and cites case law providing that parol evidence cannot be used to vary the express terms of an agreement except where reformation is sought in equity (although she does not use the term reformation). *See Blosser v. Enderlin*, 113 Ohio St. 121, 134, 148 N.E. 393 (1925).

**{¶23}** Factually, Appellant claims it was her grandparents' intent to provide her parents' house with free gas under the oil and gas lease and the dwelling referred to in the lease was meant to be the one on her parents' two acres. She also suggests her grandparents inadvertently failed to have her parents sign the lease. Appellee responds that there is no evidence of mistake, urging that Appellant's house was connected to the well (after he connected his own house) due to familial obligation, rather than legal obligation.[2]

**{¶24}** Initially, it should be noted that Appellant's complaint sought a declaration that her house was the principal dwelling entitled to receive free gas in accordance with the oil and gas lease (and sought damages for the conversion of her household from gas). An equity argument was briefly presented to the trial court in her response to summary judgment, which was essentially submitted as her trial brief with her evidence attached in lieu of trial. Appellant referred to "broad equitable principles of fairness" and suggested it was unfair to disconnect her house from the

---

[2] Appellee's response focuses on arguing that the equitable doctrine of subrogation does not apply here. The doctrine of subrogation "is for the relief of one who in the discharge of a secondary liability pays an obligation upon which another is primarily liable * * *." *Smith v. Folsom*, 80 Ohio St. 218, 229, 88 N.E. 546 (1909). However, Appellant does not set forth an argument sounding in subrogation and appears to have cited *Smith* merely as a general example of how equity can permit substance to prevail over form.

well because her house received free gas for twenty-nine years. She did not express a theory of mutual mistake of the parties to the lease. In fact, the gas company is one of those parties to the lease; yet, they are not a party to this action.

**{¶25}** In any event, even assuming arguendo certain equitable principles were available for consideration, the trial court's decision as to which party had the right to free gas under the oil and gas lease is supported by the evidence. This case was submitted to the court on the filings in lieu of live trial testimony. Still, the trial court weighs the factual evidence as the fact-finder just as it would in a case presented via live testimony. *See, e.g., Biesiada v. Ohio Soccer Assn. N.*, 8th Dist. No. 65880 (July 28, 1994) (reviewing whether the judgment was supported by some competent credible evidence after the parties agreed to submit stipulated facts and exhibits to the court in lieu of trial). The trial court occupied the best position to resolve any remaining factual disputes and balance any applicable equities.

**{¶26}** A trial court has broad discretion in applying available equitable doctrines to the facts of a particular case, and the court's decision in such a case is reviewed for an abuse of discretion. *See, e.g., Joseph J. Freed and Assoc., Inc. v. Cassinelli Apparel Corp.*, 23 Ohio St.3d 94, 96-97, 491 N.E.2d 1109 (1986) (applying the abuse of discretion standard of review to the trial court's balancing of the equities in a leasehold forfeiture case); *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 73 N.E.2d 798 (1984) (specific performance is controlled by the principles of equity, and the standard of review is whether the trial court, sitting as a court of equity, abused its discretion). *See also Blackwell*, 21 Ohio App.3d at 112 (speaking of the trial court's broad discretion in fashioning an equitable remedy).

**{¶27}** An abuse of discretion involves a decision that is unreasonable, arbitrary, or unconscionable. See *Sandusky Properties*, 15 Ohio St.3d at 275. A decision is unreasonable if there is no sound reasoning process that would support it. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) (most instances of an abuse of discretion involve a decision that is unreasonable, rather than a decision that is unconscionable or arbitrary). "It is not enough that the reviewing court, were it

deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶28} As only one dwelling is entitled to free gas, Appellant is, in effect, seeking to have Appellee's line disconnected. *See Sethi*, 126 Ohio App.3d at 386 ("A free gas clause, limited to the principal dwelling, limits the right to receive free gas to only one house on the leased premises."). She is essentially stating that it is more equitable to disconnect Appellee's line than to disconnect her line. Appellee points out that his residence was connected to the well first. More importantly, his house sits on the land owned by the grandparents at the time they signed a lease over their land while Appellant's house does not. Any evidence allowing an inference of mistake of the contracting parties or intent to benefit other property was not weighty. The grandparents executed a 1951 transfer of two acres to the parents, who immediately constructed their residence on the property. The deed for that transaction was in the chain of title for the grandparents' property, having been recorded in 1951 and re-recorded in 1959. The transfer of the two acres was not concealed in any manner from those dealing with the grandparents' land in the future. In 1968, the grandparents signed an oil and gas lease over their acreage, and the lease was recorded.

{¶29} The lease language describing a tract of the grandparents' land as containing 137 acres "more or less" in Lots 25, 26, and 29, instead of precisely 135.68 acres, is not evidence requiring the conclusion that the grandparents and the oil company intended to provide free gas to the parents' dwelling located on land not owned by the grandparents. Only the grandparents signed the lease. The lease solely referred to the "lessor" as being a beneficiary of the contract and did not refer to other parties. As the trial court pointed out, the grandparents did not live in the parents' dwelling.

{¶30} In summary, it is not uncommon for an oil and gas lease to provide free gas to a dwelling on the leasehold tract even when there is not yet a dwelling on the tract. The trial court exercised its discretion and reasonably concluded Appellant did

not demonstrate an intent by the original contracting parties to benefit a third-party owning land that the grandparents transferred seventeen years before entering the lease.  Therefore, this court holds the trial court's decision was not unreasonable, arbitrary, or unconscionable.

{¶31} In accordance, the trial court's decision is affirmed.


Donofrio, P.J., concurs.

Waite, J., concurs.