[Cite as *Tornstrom Indus. Dev. Corp. v. 123 Lyndhurst, L.L.C.*, 2025-Ohio-2302.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| TORNSTROM INDUSTRIAL DEVELOPMENT CORPORATION, et al., | **CASE NO. 2024-L-076** |
| Plaintiffs-Appellants, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| 123 LYNDHURST, LLC, et al., | Trial Court No. 2022 CV 001022 |
| Defendants-Appellees. | |

## OPINION AND JUDGMENT ENTRY

Decided: June 30, 2025
Judgment: Affirmed

*John N. Neal* and *Mark S. Fusco*, Walter Haverfield, LLP, 1500 West 3rd Street, Suite 300, Cleveland, OH 44113 (For Plaintiffs-Appellants).

*Thomas B. Bralliar, Jr.*, Thomas B. Bralliar, Jr. Co., LPA, P.O. Box 349, Willoughby, OH 44096 (For Defendants-Appellees).

EUGENE A. LUCCI, J.

{¶1} Appellants, Tornstrom Industrial Development Corporation ("TIDC"), et al. (or, alternatively "plaintiffs"), appeal the grant of summary judgment, entered by the Lake County Court of Common Pleas, in favor of appellees, 123 Lyndhurst, LLC, et al. ("Lyndhurst").[1] The primary issue is whether the trial court erred in concluding no genuine issue of material fact remains and Lyndhurst is entitled to judgment as a matter of law on the trial court's determination that plaintiffs-appellants Todd Tornstrom ("Todd") and his company Pricom Asphalt Sealcoating, Inc. ("Pricom") were third-party beneficiaries to the

---

1. Todd is the only meaningful appellant to this appeal. TIDC and the party plaintiff, Walter Tornstrom, do not advance arguments in error challenging the trial court's decision.

underlying sales agreement and, therefore, have standing to pursue claims against Lyndhurst. We affirm.

{¶2} In their complaint, TIDC, Todd, and his father, Walter Tornstrom ("Walter"), alleged that TIDC sold a storage unit facility to Lyndhurst in 2021. They contended that the purchase agreement permitted TIDC and "its relatives" to continue storing personal property rent-free in the two storage units it (or they) was/were already occupying for a period of three months after the sale. Non-party Pricom, d.b.a. American Asphalt, which is owned by Todd, had personal property inside the units and equipment outside on the blacktop. The property in these units, including some property outside the units, was not removed within the three-month period.

{¶3} Lyndhurst, through its agent David Goodrich, refused to release the property unless TIDC, et al., paid rent for the carry-over period. TIDC, et al., alleged that Lyndhurst was negligent in removing certain personal property from the units by damaging the same. TIDC, et al., asserted a claim for conversion.

{¶4} Lyndhurst filed a counterclaim against TIDC as well as Todd and Walter. In its counterclaim, Lyndhurst alleged that the plaintiffs occupied the units without permission and without paying rent after the three-month period ended and that they damaged the facility when they were removing certain aspects of the property. Lyndhurst asserted claims for breach of contract, breach of the duty of good faith, fraud, securities fraud, negligent misrepresentation, trespass, criminal trespass, and unjust enrichment.

{¶5} The parties mutually moved for summary judgment against one another.

{¶6} In its motion against Todd, Lyndhurst emphasized that all of "Todd's" personal property is titled to Pricom. Accordingly, Lyndhurst alleged Todd lacked standing

Case No. 2024-L-076

to assert any claims against it. In its motion against TIDC, Lyndhurst pointed out that, pursuant to Walter's deposition testimony, TIDC did not have any personal property in the units or on the blacktop. The trial court granted Lyndhurst's motions for summary judgment against both Todd and TIDC. The trial court accordingly dismissed Todd and TIDC as plaintiffs. The court noted, however, that it would consider whether Todd and TIDC are proper counterclaim defendants (given they did not personally own any of the property in the units or on the property) prior to trial.

{¶7}   Lyndhurst raised eight counterclaims that were subject to the plaintiffs' motion for summary judgment. The plaintiffs did not dispute that the personal property remaining at the property and on the blacktop was left beyond the three-month period set forth in the contract. Lyndhurst's claims for securities fraud (Count Two), common law fraud (Count Three), and negligent misrepresentation (Count Five) were premised upon the factual allegation that the plaintiffs had no intention of removing the property when they signed the agreement. Deposition testimony of Lyndhurst's principals demonstrated they had no evidence and no reason to believe this was the plaintiffs' intention. The trial court accordingly granted summary judgment to the plaintiffs on these counts.

{¶8}   With respect to Lyndhurst's claim for breach of contract (Count Four), Lyndhurst alleged a breach of the purchase agreement's terms by failing to remove the personal property at the end of the three-month period. The trial court determined this count as well as Lyndhurst's breach of the duty of good faith (Count One) survived the plaintiffs' motion for summary judgment.

{¶9}   Further, the trial court determined that Lyndhurst's claims for trespass (Count Six) and criminal trespass (Count Seven) require the court to make factual findings

upon which the parties do not agree. Similarly, the court determined that Lyndhurst's claim for unjust enrichment (Count Eight) requires the factual assessment that plaintiffs received no benefit from continuing to store their personal property in the units. The court determined, therefore, that the factual nature of these counts preclude summary judgment. Summary judgment, however, was granted to the plaintiffs on Lyndhurst's counterclaim on Counts Two, Three, and Five.

{¶10} The trial court, recognizing that fewer than all of the claims or rights and liabilities of fewer than all the parties had been adjudicated, determined, because the claims of Todd and TIDC were fully resolved, that there was no just reason to delay an appeal. No challenges to the finality of the order have been submitted to this court. Because the judgment affects Todd's substantial right to seek claimed redress under the civil rules and, in effect determines the action and prevents a judgment for him, we deem the order is final and appealable when affixed with the Civ.R. 54(B) language. *See* R.C. 2505.02(B)(1).

{¶11} Appellants, TIDC, Todd, and Walter appealed the judgment; the only argument asserted on appeal, however, is whether the trial court erred in concluding Todd lacked standing. The assignment of error provides:

{¶12} "The trial court erred by granting appellee 123 Lyndhurst, LLC's July 2, 2024 motion for summary judgment against the claims of appellant Todd Tornstrom for lack of standing."

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party

being entitled to have the evidence construed most strongly in his favor.

(Citation omitted.) *Zivich v. Mentor Soccer Club, Inc.*, 1998-Ohio-389, ¶ 7.

{¶13} In general, Todd argues the trial court erred in dismissing him as a plaintiff for lack of standing. "A preliminary inquiry in all legal claims is the issue of standing. 'The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented.'" *Cuyahoga Cty. Bd. of Commrs. v. State*, 2006-Ohio-6499, ¶ 22, quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 1994-Ohio-183. The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has alleged a personal stake in the outcome of the controversy. *Mtge. Electronics Registration Sys. v. Petry*, 2008-Ohio-5323, ¶ 18 (11th Dist.). Whether a plaintiff has standing to assert a claim is a matter of law that we review de novo. *Cuyahoga* at ¶ 23.

{¶14} Todd makes several arguments, all of which are related. Todd initially argues that he was an intended third-party beneficiary to the real estate purchase agreement granting him post-closing possession rights and therefore had standing to bring the claims against Lyndhurst. Next, Todd contends, if he possessed intended third-party beneficiary rights under the contract, he must therefore have standing as a plaintiff. Finally, Todd asserts that, if he is an intended third-party beneficiary, then Lyndhurst owed him a contractual duty which he had standing to enforce.

{¶15} "Standing" is defined as "'[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* (8th Ed. 2004). "To succeed in establishing standing, plaintiffs must show that they suffered (1) an injury that is (2) fairly

traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). "These three factors—injury, causation, and redressability—constitute 'the irreducible constitutional minimum of standing.'" *Moore*, quoting *Lujan* at 560. It follows that the elements are conjunctive. Therefore, without a cognizable injury, or any other factor, a party has no standing to assert a claim.

{¶16} We first point out that Todd did not specifically raise his third-party-beneficiary argument when he opposed Lyndhurst's motion for summary judgment. He, therefore, has forfeited all but plain error on appeal. *See, e.g., Rising v. Litchfield Twp. Bd. of Trustees*, 2016-Ohio-6971, ¶ 16 (9th Dist.). The plain error doctrine is disfavored in civil appeals and is only applied in rare cases. *Goldfuss v. Davidson*, 1997-Ohio-401, syllabus.

{¶17} Todd claims that he and Pricom, the business of which he is the sole shareholder and a non-party to this case, were intended third-party beneficiaries to the contract of sale between TIDC's and Lyndhurst's agreement to sell the property. He claims the agreement demonstrates this intention. The contract provides that "Seller *and its relatives* shall have Three (3) months of Possession after Closing in these units at no rent or common area maintenance fees." (Emphasis added.) Todd additionally points to Lyndhurst's counterclaim, which alleged "[t]he individuals whom TIDC intended to permit use of those two units were two of TIDC's stakeholders, Walter Tornstrom and Todd Tornstrom." Todd further underscores Lyndhurst's allegations that TIDC, Walter, and

Case No. 2024-L-076

Todd were given an opportunity to remove the personal property but failed to do so. Taken together, Todd maintains he, along with Pricom, were intended third-party beneficiaries.

{¶18} In Ohio, a third-party beneficiary may maintain an action based upon the contract which contains the promise for its benefit. *Rhorbacker v. Citizens Bldg. Assn.*, 138 Ohio St. 273, 276 (1941). A third-party beneficiary "'is one for whose benefit a promise has been made in a contract but who is not a party to the contract.'" *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 2009-Ohio-2164, ¶ 40 (10th Dist.) quoting *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 196 (8th Dist. 1973). "Whereas an intended third-party beneficiary has enforceable rights under a contract, an incidental third-party beneficiary does not." *Maghie & Savage, Inc.* at ¶ 40, citing *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988).

{¶19} Ohio has also adopted "the statement of law with respect to intended and incidental beneficiaries found in Restatement of the Law 2d, Contracts, § 302, at 439-440 (1981)." *Hill* at 40. In this regard, § 302 states as follows:

> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> "(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> "(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

Case No. 2024-L-076

*Hill* at 40, quoting § 302; *see also Rupp v. Premier Health Partners*, 2025-Ohio-986, ¶ 140 (2d Dist.)

{¶20} Further, "comment e" of § 302 provides: "*Incidental beneficiaries. Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.*" (Emphasis in original.)

{¶21} In *Hill*, 36 Ohio St.3d at 40, the Supreme Court of Ohio adopted the Sixth Circuit Court of Appeals' "intent-to-benefit" test to determine whether a third party is an intended or an incidental beneficiary. The court observed:

> "Under this analysis, if the promisee . . . intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract.
>
> "[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary."

*Id.,* quoting *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980).

{¶22} For a third party to be an intended beneficiary under a contract, "there must be evidence that the contract was intended to *directly* benefit that third party." *Huff v. FirstEnergy Corp.*, 2011-Ohio-5083, ¶ 12. (Emphasis added.) Usually, "the parties' intention to benefit a third party will be found in the language of the agreement." *Id.*

{¶23} In this case, neither Todd nor Pricom were identified in the purchase agreement. As such, Todd can only have standing as an intended third-party beneficiary. The purpose of the contract was the sale of the subject property from TIDC to Lyndhurst.

It was not entered to *directly* benefit Todd or Pricom. Indeed, the provision relating to the three-month use of the storage by TIDC and its "relatives" would appear to be an incidental condition negotiated between the parties to facilitate the sale.

{¶24} Although Todd asserts he was a "relative" of TIDC because he was a shareholder of TIDC and/or the only shareholder of Pricom (the company that owned the personal property on the real estate), the parties did not submit any competent evidence of the parties' intention to personally benefit either Todd or Pricom in entering the purchase agreement. Importantly, Todd confirmed that all of the personal property referenced in the amended complaint was actually owned by Pricom, a non-party. In particular, Todd testified at deposition:

> Q. Do you recall any personal property that you owned that was left at the Lost Nation Road real estate after expiration of the three-month period referenced in [the purchase agreement]?
>
> A. All of it.
>
> Q. It was owned by you personally?
>
> A. No. It was owned by the company.
>
> Q. That's what I'm asking. Do you believe there were any items of personal property owned by you, not the company, American Asphalt?
>
> A. I don't believe so.

{¶25} Later in the deposition, Todd further testified:

> Q. Now, the personal property that you, Todd Tornstrom, owned that was at Lost Nation Road[, the property,] included motor vehicles?
>
> A. There was [sic] two race cars, a race car trailer, three trailer units and equipment, miscellaneous items, and office furniture.

Q. Those were owned by you personally?

A. Owned by the company.

Q. They were all owned by American Asphalt?

A. I believe so.

{¶26} Todd's status as a shareholder may be irrelevant because Pricom was the actual owner of the personal property which was stored. There is nothing to suggest that Todd's status as the sole shareholder of Pricom somehow makes him the owner of the personal property at issue. *See Reld & G Enterprise Inc. v. Eldanaf*, 2025-Ohio-276, ¶ 10 (8th Dist.), quoting *Adair v. Wozniak*, 23 Ohio St.3d 174, 176 (1986) ("'It is well-settled that only a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation' . . . ."). *See also Ardeth Chupp-Huron Cty. Treasurer v. Inmon*, 1982 WL 6455, *1 (6th Dist. June 18, 1982) ("It is well settled that a corporation is a legal entity entirely separate from its shareholders.").

{¶27} Finally, the phrase "Seller and its relatives" is, at best, ambiguous. The plain meaning of "relative" is "a person connected by blood or marriage." Oxford Languages Dictionary Online, google.com (accessed Apr. 8, 2025). Unlike sentient or living beings, corporations do not have blood and thus cannot have consanguinity with humans or other legal entities. Nor can corporations wed with others, sentient or otherwise. Corporations are creatures of statute. They are artificial persons, "'created by the General Assembly and deriving [their] power, authority and capacity from'" Ohio's statutes governing corporations. *Bd. of Edn. of Worthington City School Dist. v. Bd. of Revision of Franklin Cty.,* 1999-Ohio-449, ¶ 7, quoting *Union Savs. Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 62 (1970).

**{¶28}** Neither party attempted to clarify the phrase "Seller and its relatives" in the contract. Nothing in Todd's brief or any previous filing in the trial court attempted to elucidate the meaning of this phrase. And, during his deposition, Todd stated that he did not think a corporation "could be a relative to anyone."

**{¶29}** Further, even though Lyndhurst's counterclaim *alleged* that TIDC intended Walter and Todd to have use of the units, this is merely an unverified allegation, and not Civ.R. 56(E) competent evidence. There was no express intent in the purchase agreement to evince this intention. The evidence demonstrates that Todd did not own the property in the units. While Pricom owned the personal property on the premises, it was not a party to this litigation.

**{¶30}** Because the primary and direct purpose of the purchase agreement was the sale of the property from TIDC to Lyndhurst, we conclude that Todd was an incidental beneficiary to the purchase agreement. Accordingly, Lyndhurst owed him no contractual duty or duties. Additionally, we discern no cognizable injury suffered by Todd by Lyndhurst's removal of the property belonging to Pricom. These points necessitate the conclusion that Todd lacked standing to pursue the underlying suit as a plaintiff. The trial court did not err, let alone commit plain error, in concluding Todd lacked standing.

**{¶31}** Todd's sole assignment of error lacks merit.

**{¶32}** The judgment of the trial court is affirmed.

ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-L-076

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellants' sole assignment of error lacks merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellants.

JUDGE EUGENE A. LUCCI

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE JOHN J. EKLUND,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-L-076