[Cite as *Asia-Pacific Futures Research Symposium Planning Commt. v. Kent State Univ.*, 2016-Ohio-2691.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**


| | | |
|---|---|---|
| ASIA-PACIFIC FUTURES RESEARCH SYMPOSIUM PLANNING COMMITTEE, AS SUCCESSOR IN INTEREST TO CBOT EDUCATIONAL RESEARCH FOUNDATION, | : : : | **O P I N I O N** |
| | | **CASE NO. 2015-P-0052** |
| Plaintiff-Appellant, | : | |
| - vs - | : | |
| KENT STATE UNIVERSITY, et al., | : | |
| Defendants-Appellees. | : | |


Civil Appeal from the Portage County Court of Common Pleas.
Case No. 2013 CV 00649.

Judgment: Affirmed.


*Mark W. Bernlohr* and *Sandra K. Zerrusen*, Jackson Kelly, PLLC, 17 South Main Street, Suite 101B, Akron, OH 44308; *Sam P. Israel*, Sam P. Israel, P.C., One Liberty Plaza, 23rd Floor, New York, NY 1006 (For Plaintiff-Appellant).

*Mike DeWine*, Ohio Attorney General, and *James D. Miller*, Assistant Attorney General, 30 East Broad Street, 16th Floor–Education Section, Columbus, OH 43215 (For Defendants-Appellees Kent State University and Gene Finn).

*Rodd A. Sanders* and *Lawrence R. Bach*, Roderick Linton Belfance LLP, 50 South Main Street, 10th Floor, Akron, OH 44308-1828 (For Defendant-Appellee The Kent State University Foundation).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Asia-Pacific Futures Research Symposium Planning Committee, as Successor in Interest to CBOT Educational Research Foundation,

appeals the decision of the Portage County Court of Common Pleas granting summary judgment in favor of appellees, Kent State University, The Kent State University Foundation, and Gene Finn. For the reasons that follow, we affirm.

{¶2} In 2002, the Chicago Board of Trade Educational Research Foundation ("CBOT-ERF") decided to gift $1.2 million to The Kent State University Foundation ("the Foundation"). The purpose of the gift was two-fold: (1) to financially support an annual symposium and its publications regarding futures, options, and financial engineering; and (2) to financially support a Master of Science in Financial Engineering program at Kent State University ("the University").

{¶3} To effectuate this gift, CBOT-ERF and the Foundation entered into a contract ("the Agreement"). The Agreement provided, in paragraph 14, that in the event CBOT-ERF was dissolved, "all rights and obligations under the Agreement" could be assigned to an Emeritus Board. The Emeritus Board was to "be comprised initially of individuals who currently serve[d]" on CBOT-ERF, and it had authority to appoint a "Donor Representative" to act on its behalf with the Foundation. Pursuant to the Agreement, the Foundation was permitted to "accept without further inquiry that any Donor's Representative designated by the Emeritus Board has the authority to bind the Emeritus Board for purposes of complying with and enforcing the terms of this Agreement." The Agreement also provided, in paragraph 10, that if expenditures were rendered "unnecessary or impracticable for the purposes and objectives specified in [the] Agreement and the Donor or Donor's Representative [did] not provide alternative feasible directions," the Foundation was permitted to expend funds "for support of such programs that further the purposes for which the [funds] were established."

2

**{¶4}** CBOT-ERF subsequently dissolved, and the directors became the Emeritus Board ("the Board"). For ten years, the Board met annually with Dr. Mark Holder, the head of the University's Master of Science and Financial Engineering program ("MSFE program"). Dr. Holder was appointed as the Donor's Representative at one of these meetings. During these meetings, Dr. Holder provided the Board with results of that year's symposium, and the Board provided input regarding the next symposium. These symposiums were held under the moniker of "Asia-Pacific Futures Research Symposium" ("APFRS") and were held overseas. Although the CBOT-ERF gift provided the majority of funds used to financially support the APFRS, there were other donors involved as well.

**{¶5}** The MSFE program was eliminated by 2012, and the director of the Foundation, Gene Finn, determined it was not practical to continue the APFRS. Mr. Finn contacted Patrick Catania, the Board's appointed contact, and suggested the gifted funds could instead support the University's College of Business and Risk Management.

**{¶6}** Mr. Catania responded that the Board was not pleased with these developments and the consensus was to move the funds to another local university. This plan never came to fruition. Mr. Catania later sought to obtain the Board's consent to continue funding the APFRS but was met with disagreement. The rest of the directors wanted to move the gifted funds from the Foundation and create a 501(c)(3) charitable entity to hold the funds. Mr. Catania strongly opposed this decision, and the Board suggested Mr. Catania resign.

**{¶7}** Mr. Catania informed Mr. Finn of the disagreement between the directors and his opposition to the change. Mr. Finn responded that he would act only after

3

receiving instruction from the Board. Mr. Catania expressed his concern that the Foundation would consider moving the funds to the charitable entity. Mr. Finn then expressed to Mr. Catania that although he was not opposed to continued funding of the APFRS, he could only act upon agreement of the Board. In October 2012, the Board instructed Mr. Finn to transfer the funds once the 501(c)(3) charitable entity was approved. Mr. Finn responded that this would completely prevent the Foundation from funding the APFRS.

{¶8} In May 2013, the Board appointed Mr. Lawrence Dorf, Chairman of the Board, as the new Donor's Representative. The Foundation did not distribute any funds for the APFRS that year due to the situation with the gifted funds. Litigation was commenced by the purported "planning committee" of the APFRS, appellant herein, "at the direction of" Dr. Holder, "Managing Member of the Organizer Committee of the Symposium, a position held by him since its inception," and Mr. Catania, "former President and CEO of CBOT-ERF, and at all times the sole liaison between the Committee and the Foundation."

{¶9} Appellant filed a complaint, an amended complaint, and finally a second amended verified complaint against the Foundation, the University, and Mr. Finn as both the Executive Director of the Foundation and an employee of the University. Appellant filed a motion for leave to file a third amended complaint, which was denied. Appellant asserted a breach of contract claim against all three defendants, and breach of fiduciary duty and conversion claims against the Foundation. It requested the court (1) issue a declaratory judgment that appellees were in breach of terms of the Agreement; (2) order specific performance of the Agreement; and (3) grant an injunction

4

compelling future compliance with the Agreement.  Appellant also filed a motion for a preliminary injunction, which was denied after a hearing.

{¶10}  The Foundation and Mr. Finn (in his capacity as Executive Director) filed a joint partial motion to dismiss, which the trial court subsequently converted to a motion for summary judgment pursuant to Civ.R. 12(B).  The University and Mr. Finn (as an employee of the University) also filed a joint motion for summary judgment.  The trial court granted both summary judgment motions in separate entries and dismissed all of appellant's claims.

{¶11}  Appellant filed a timely appeal from these entries and asserts six assignments of error for our review:

> [1.] The trial court erred in granting the Defendants-Appellees Kent State University Foundation, Inc., and Eugene Finn's motion for summary judgment on the Plaintiff-Appellant's breach of contract claim due to lack of standing to enforce the agreement because a factual question existed as to whether the 'circumstances' surrounding a quasi-endowment agreement established that the Plaintiff-Appellant was an intended third-party beneficiary to the agreement.

> [2.] The trial court erred in granting summary judgment on the issue of breach of contract in favor of Defendants-Appellees.  The Asia-Pacific Futures Research Symposium is the only extant symposium founded by a donor in a quasi-endowment agreement which required annual funding to 'the symposium,' has been the only Symposium to receive funding under the quasi-endowment agreement since 2003, and the testimony from the chief drafter of the agreement and CEO of the donor established that the quasi-endowed funds were specifically intended to fund the Plaintiff-Appellant's annual symposium.  The halt of funding constituted a breach of the agreement.

> [3.] The trial court, on a summary judgment motion, erred in rejecting, as unreliable, the sworn-testimony of Patrick Catania that no assignment of contractual rights ever occurred between the Chicago Board of Trade Educational Research Foundation and any

5

'Emeritus Board' prior to the Chicago Board of Trade Educational Research Foundation's dissolution.

[4.] The trial court erred in granting summary judgment on the claim of breach of fiduciary duty in favor of Defendant-Appellant Kent State University Foundation because uncontroverted testimony established that the foundation had received hundreds of thousands of dollars in funds from no-less than nineteen third-party donors that were provided for expenditure on Plaintiff-Appellant's annual symposium and, accordingly, the foundation's current refusal to release the funds comprises a breach of the trust reposed in it by the Plaintiff-Appellant.

[5.] The trial court erred in granting summary judgment in favor of Defendant-Appellant Kent State University because a triable issue of fact exists as to whether the Kent State University Foundation— which publically purports to 'receive gifts on behalf' of Kent State University and represented that it had control over Kent State University's faculty and staff for the purposes of the Agreement— acted as an agent of Kent State University with respect to the quasi-endowment agreement.

[6.] The trial court erred in determining that Mark Holder was not the Donor's Representative on summary judgment because testimony of multiple parties established that the original Donor's Representative appointed by CBOT-ERF nominated Mark Holder as his successor; Kent State University and the Kent State University Foundation accepted and recognized Mark Holder as the Donor's Representative for a decade; and no 'Emeritus Board' exists under the agreement with authority to revoke the Donor's Representative's status.

{¶12} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶13} The moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record which demonstrate there is no genuine issue of material fact to be resolved in the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts which prove there remains a genuine issue to be litigated, pursuant to Civ.R. 56(E)." *Fed. Home Loan Mtge. Corp. v. Zuga*, 11th Dist. Trumbull No. 2012-T-0038, 2013-Ohio-2838, ¶12, citing *Dresher*, *supra*, at 293.

{¶14} We review a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this court conducts an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).

{¶15} Initially, we note that appellant's legal capacity to sue is in question. There is no explanation in the second amended verified complaint as to the legal status of the "planning committee." The complaint itself alleges it was brought "at the direction of" Dr. Holder and Mr. Catania. The Foundation and Mr. Finn referenced a lack of capacity in their reply to appellant's opposition to the motion to dismiss; however, capacity was never addressed by the trial court. Nevertheless, while the capacity of appellant as a "planning committee" to file suit has not been established, it is not necessary to determine for disposition of this appeal.

{¶16} Under its first assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of the Foundation and Mr. Finn on the breach of contract claim based on its finding that appellant lacked standing to sue on the contract.

7

{¶17} Appellant claimed the Foundation and Mr. Finn breached its contractual obligation by failing to fund the APFRS. As the moving parties for summary judgment, the Foundation and Mr. Finn showed an element of the breach of contract claim could not be established: i.e., appellant does not have standing to enforce the contract because it is not a party to the agreement. Appellant responded that it does have standing to enforce the contract as an intended third-party beneficiary and contends it has created a genuine issue of material fact in this regard.

{¶18} "Generally, a contract is only binding on those who are parties to it. A party cannot sue for performance or breach of a contract to which he is not a party or privy." *Waterfield Mtge. v. Buckeye State Mut. Ins. Co.*, 2d Dist. Miami No. 93-CA-53, 1994 Ohio App. LEXIS 4343, *6 (Sept. 30, 1994), citing *Delly v. Lehtonen*, 21 Ohio App.3d 90, 90 (11th Dist.1984). Intended third-party beneficiaries "have the rights of parties in privity of contract and thus may bring suit for breach of contract or to enforce performance." *Id.* at *9, citing *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161 (1991) (contrasting incidental and intended third-party beneficiaries). It is clear, from the face of the contract, that appellant was not an express party to the Agreement. Therefore, appellant could survive summary judgment on the issue of standing only if it established a genuine issue of material fact existed regarding its status as an intended third-party beneficiary.

{¶19} Regarding third-party beneficiaries, the Ohio Supreme Court has adopted the statement of law in Restatement of the Law 2d, Contracts Section 302 (1981). *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988). Section 302(1)(b) provides: "[A] beneficiary of a promise is an intended beneficiary if recognition of a right

8

to performance in the beneficiary is appropriate to effectuate the intention of the parties and * * * the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Therefore, "unless the third person is an intended beneficiary as here defined, no duty to him is created." *Id.* at Comment e.

{¶20} The Supreme Court further explained this "intent to benefit test" by adopting the following language:

> 'Under this analysis, if the promisee * * * intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.'

*Hill*, *supra*, at 40, quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir.1980); *see also Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶11.

{¶21} "Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Huff*, *supra*, at ¶12. Courts generally presume that an "intention to benefit a third party will be found in the language of the agreement." *Id.* There is no requirement, however, that the third-party beneficiary be explicitly identified in the contract. *See, e.g.*, *Daley v. Fryer*, 3d Dist. Allen No. 1-14-48, 2015-Ohio-930, ¶33; *First Fed. Bank of Ohio v. Angelini*, 3d Dist. Crawford No. 3-07-04, 2007-Ohio-6153, ¶11.

{¶22} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984), citing *Alexander v.*

9

*Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635 (1992), at syllabus.

{¶23} Here, with emphasis added, paragraph 3 of the Agreement states:

3. The funds shall be used for the following purposes:

a. To provide financial support of at least $40,000 per year to continue and preserve the tradition that the Donor started with *its annual symposium dedicated to futures and options.*

b. To provide financial support for the publication of the proceedings of *the symposium.*

c. To provide financial support for the Master of Science in Financial Engineering ('MSFE') Program and supporting components at Kent State University, but only to the extent that the use of funds for this purpose will not detract from the Foundation's ability to fund *the annual symposium* on an ongoing basis.

{¶24} It is undisputed that the APFRS had been organized and managed prior to the Agreement as a result of the efforts of CBOT-ERF, the Donor. In order to "continue and preserve the tradition that the Donor started," the only reasonable interpretation of "its annual symposium" is that it refers to the APFRS. It was also the only symposium to ever receive funding via this contract. However, nowhere in the Agreement does it state or imply that appellant, as a "planning committee," was entitled to be the sole organizer or manager of the symposium.

{¶25} Further, paragraphs 10 and 14 of the Agreement state the following:

10. If State or Federal laws, actions, dissolutions of Kent State University or other events render expenditures unnecessary or

10

impracticable for the purposes and objectives specified in this Agreement *and the Donor or Donor's Representative * * * does not provide alternative feasible directions* as to use of the CBOT-ERF Operating and Quasi-Endowed Funds within twelve (12) months after notice of the need for modification is mailed by the Foundation to the Donor/Donor's Representative's last known address, *the balances of the CBOT-ERF Operating and Quasi-Endowed Funds may be expended by the Directors of the Foundation* for support of such programs that further the purposes for which the CBOT-ERF Operating and Quasi-Endowed Funds were established.

\* \* \*

14. * * * The Foundation may accept without further inquiry that *any Donor's Representative designated by the Emeritus Board has the authority to bind the Emeritus Board* for purposes of complying with and enforcing the terms of this Agreement. [Emphasis added.]

Again, there is no reference to appellant, and appellant has not provided any evidence to suggest it has any contractual right to sponsor, manage, or organize the symposium.

{¶26} Given these contractual provisions, we conclude the Foundation and CBOT-ERF unambiguously entered into the Agreement with no intention to directly and primarily benefit appellant and with no intention to bestow control of the APFRS upon appellant. Appellant has not established a genuine issue of material fact exists regarding any legal right, pursuant to this Agreement, to sponsor the APFRS. Any benefit appellant may have received from this Agreement was therefore incidental, as a matter of law, and does not have standing to sue on the contract.

{¶27} Appellant's first assignment of error is without merit.

{¶28} Under its second assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of the Foundation and Mr. Finn on the breach of contract claim based on its finding that there was no breach. The Foundation and Mr. Finn correctly point out, however, that their motion for summary judgment did

11

not present any argument regarding breach, and the trial court did not reach the issue of breach because it found appellant did not have standing to enforce the contract. This argument is therefore not properly before us. Further, based upon our disposition of the first assignment of error, this issue is moot.

{¶29} Appellant's second assignment of error is without merit.

{¶30} Under its fifth assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of the University and Mr. Finn, as its employee.

{¶31} Appellant claimed the University and Mr. Finn breached a contractual obligation by failing to order the Foundation to fund APFRS. As the moving parties for summary judgment, the University and Mr. Finn showed an essential element of appellant's breach of contract claim could not be established: i.e., the University and Mr. Finn were not parties to the agreement and had no direct control over the Foundation. This was sufficient to shift the burden to appellant to establish the existence of a genuine issue of material fact. Appellant maintained the University can be held liable for breach of contract as the Foundation's principal. Appellant did not provide any evidentiary material in support of this argument, however, and thus has not established a genuine issue of material fact exists as to the University and Mr. Finn's liability on the contract.

{¶32} Appellant's fifth assignment of error is without merit.

{¶33} Under its fourth assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of the Foundation on the breach of fiduciary duty claim.

12

{¶34} To succeed on a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom. *Hurst v. Ent. Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶39 (11th Dist.). A fiduciary relationship exists when "'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 442 (1996), quoting *In re Pratt*, 40 Ohio St.2d 107, 115 (1974); *see also Vinecourt Landscaping Inc. v. Kleve*, 11th Dist. Geauga No. 2013-G-3142, 2013-Ohio-5825, ¶35.

{¶35} The Foundation, as the party moving for summary judgment, argued it owed no duty to appellant and contended appellant could not establish the existence of such a duty. Appellant claims a fiduciary relationship existed because "the KSU Foundation and KSU were entrusted with the special role of providing [appellant] with the funding it needed to plan and organize the Symposium." Appellant further argues the Foundation breached its fiduciary duty when it refused to financially support APFRS.

{¶36} In support of this claim, appellant points to the terms of the Agreement and the testimony from Mr. Holder and Mr. Catania that the Agreement was breached. As we held above, however, appellant does not have standing to assert a claim that the Agreement was breached. Further, appellant apparently solicited other donors of the Foundation and claimed a breach as to those donors. Appellant does not have standing to argue that a fiduciary duty was owed, and breached, as to other donors of the Foundation. Therefore, appellant has not established a genuine issue of material fact exists as to a fiduciary duty owed by the Foundation.

13

{¶37} Appellant's fourth assignment of error is without merit.

{¶38} Under its third and sixth assignments of error, appellant essentially asserts the trial court erred by weighing the evidence and making factual findings, an improper exercise on summary judgment. Neither our holding, nor that of the trial court, that appellant lacked standing to bring its claims requires a "weighing" of any disputed factual issues. As a result, these assignments of error are not well taken.

{¶39} Appellant's third and sixth assignments of error are without merit.

{¶40} For all of the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.