[Cite as *Todd v. Epling*, 2025-Ohio-399.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kathryn A. Todd, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 24AP-220 |
| v. | : | (Prob. No. 585751A) |
| Aaron B. Epling, Administrator WWA et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on February 6, 2025

**On brief:** *Williams & Finkbine Co. LLC, Brian A. Williams,* and *Susan S. R. Petro* for appellee. **Argued:** *Brian A. Williams.*

**On brief:** *Thompson Hine LLP, John B. Kopf, Kelsey J. Mincheff,* and *Mac P. Malone* for appellant. **Argued:** *John B. Kopf III.*

APPEAL from the Franklin County Probate Court

MENTEL, J.

{¶ 1} Intervenor-appellant, William A. Todd, as Trustee of the William M. Todd Declaration of Trust ("Trustee"), appeals from the judgment of the Franklin County Probate Court denying his application for attorney fees. He sought attorney fees after intervening in this matter to represent the interests of the trust created by his deceased father, William M. Todd, after the elder Mr. Todd's ex-wife, plaintiff-appellee, Kathryn A. Todd, filed suit seeking to have their separation agreement set aside. For the reasons that follow, the judgment of the probate court is affirmed.

## I.    Factual and Procedural Background

{¶ 2}   Kathryn Todd and William M. Todd married on May 24, 2008.  (Pl.'s Tr. Ex. 1, hereinafter "Separation Agreement.")  Two years and four months later, in September of 2011, they decided to part ways and entered into a separation agreement.  *Id.*  Under the agreement, they agreed that "the marital residence" at 2417 Brentwood Rd., Bexley, Ohio (the "Brentwood property") would be awarded to Mr. Todd, who would "retain all right, title, use and ownership . . . free and clear of any claims" by Ms. Todd.  *Id.* at 4.  Ms. Todd kept another Bexley home under the agreement.  *Id.*  The following provision governed transfer of the Brentwood property:

> The parties further agree that on or before January 15, 2013, Husband shall pay to the Wife the sum of Thirty Thousand Dollars ($30,000) as property settlement payable by Husband to Wife by certified bank check . . . . In exchange for this payment Wife will execute and deliver a quit claim deed for her interest in 2417 Brentwood Rd.

*Id.* at 6.

{¶ 3}   The separation agreement also contained a provision, captioned "Enforcement Expenses," allowing for attorney fees under the following circumstances:

> If either Husband or Wife defaults on the performance of any of the terms, provisions, or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

*Id.* at 8.

{¶ 4}   In another provision captioned "Binding Effect," the separation agreement provided:

> The parties agree that if an action for Dissolution of Marriage, Divorce or Legal Separation is hereafter filed and for any reason is withdrawn or dismissed, it is intended by the parties that this Agreement shall, nonetheless, remain in full force and effect and be binding upon both parties, their heirs, executors, administrators, next of kin and assigns.

*Id.* at 9.

{¶ 5}   Mr. Todd did not pay Ms. Todd the entire $30,000 for the Brentwood property promised in the separation agreement by the January 15, 2013 deadline.  (Mar. 11,

2020 Mag.'s Decision at 6.) He died on June 4, 2017. *Id.* By that time, he had paid her $20,000 of the amount owed. (Mar. 11, 2021 Jgmt. Entry at 3.)[1] At the time of Mr. Todd's death, he and Ms. Todd had not divorced, but they never lived together again after their initial separation. (Mar. 11, 2020 Mag.'s Decision at 4.)

{¶ 6} On April 18, 2017, Mr. Todd executed a will and created a trust. (Ex. K., Feb. 13, 2018 First Am. Compl.) His will acknowledged that he was married to Kathryn Todd, and that he had two sons, William A. Todd and Eric M. Todd (who were not related to Ms. Todd). *Id.* at 2. After providing for the payment of debts, funeral expenses, and tax liabilities be charged against his estate, Mr. Todd's will provided that:

> All the rest and residue of the property, real or personal, of every kind and description, wheresoever located, which I may own or have the right to dispose of, I give, bequeath and devise to Huntington National Bank, as successor Trustee, or to the then acting successor Trustee, to be held and disposed of under the Declaration of Trust as declared by me in the William M. Todd Declaration of Trust under date of April 18, 2017, as the same may be amended by me from time to time. It is my intention simply to identify said Trust and not to incorporate it by reference into this Will or to create a testamentary trust hereby.

*Id.*

{¶ 7} Mr. Todd died on June 4, 2017. (Mar. 11, 2020 Mag.'s Decision at 6.)

{¶ 8} On October 23, 2017, Ms. Todd filed a complaint in the probate court seeking to have the separation agreement set aside. The complaint named Huntington National Bank, the administrator of Mr. Todd's estate, as the defendant. (Oct. 23, 2017 Compl.) Having replaced the bank as administrator with will annexed, Aaron B. Epling, moved to be substituted as a party. (Dec. 8, 2017 Def.'s Mot.) The probate court granted Mr. Epling's motion. (Dec. 8, 2017 Entry.) In addition, William and Eric Todd filed a motion to intervene under Civ.R. 24. (Jan. 22, 2018 Mot.) They sought to intervene as beneficiaries of the trust, while William additionally sought to intervene based on his status as Trustee. *Id.*

---

[1] The probate court incorporated the magistrate's Findings of Fact into its March 11, 2021 Judgment Entry, with the exception of Finding of Fact 16, which was corrected to reflect that Mr. Todd had paid $20,000 towards the amount owed. The magistrate had incorrectly stated the paid amount as $25,000.

{¶ 9}    Ms. Todd amended her complaint on Feb. 13, 2018. The complaint described the provision of the separation agreement that had required Mr. Todd to pay $30,000 by January 15, 2013, which, upon fulfillment, would have "give[n] rise to a contractual duty for" Ms. Todd "to convey her interest" in the Brentwood property to him. (Feb. 13, 2018 First Am. Compl. at ¶ 5.) Because Mr. Todd had failed to pay, the complaint asserted that the "condition precedent" to the property transfer had "never occurred." *Id.* According to the complaint, Mr. Todd's "conduct after the deadline . . . revealed that he [had] fraudulently induced" Ms. Todd to enter into the separation agreement with no intention to fulfill his obligations under it "in order to manipulate [her] into providing [him] with health insurance coverage." *Id.* at ¶ 6. Because Ms. Todd was a joint tenant with right of survivorship on the deed to the Brentwood property, the complaint claimed that she "became the sole owner" of it when Mr. Todd died. *Id.* at ¶ 2, 9. Thus, the complaint alleged that William and Eric Todd, as beneficiaries of their father's trust, had filed an allegedly "spurious Affidavit" during the administration of the estate "baselessly claiming" that the separation agreement gave the estate an interest in the Brentwood property. *Id.* at ¶ 9.

{¶ 10} The complaint alleged that after the deadline for paying the $30,000 in exchange for the Brentwood property, Mr. Todd had informed Ms. Todd by email that "he had no intention of honoring" the obligation; they need to renegotiate the deal and he offered $20,000 in exchange for the property instead; the separation agreement was unenforceable under Ohio law; and Mr. Todd had only entered into it because he "needed health insurance." *Id.* at ¶ 33-36. The complaint claimed that Ms. Todd "was persuaded and fraudulently induced" by Mr. Todd, a licensed attorney, "to enter into the void and unenforceable Separation Agreement," at which time he had "concealed from and misrepresented" to her that he "had no intention of performing" under it. *Id.* at ¶ 64, 66. Based on these "material misrepresentations and/or concealments," Ms. Todd sought to have the separation agreement set aside as void, claiming that it was "the result of fraud, deceit, duress, and coercion." *Id.* at 81, 87. In addition, Ms. Todd sought a declaratory judgment stating that she was "the sole lawful and proper owner" of the Brentwood property, and that Mr. Todd's estate had "no interest, right or title" to it. *Id.* at ¶ 98.

{¶ 11} The amended complaint also acknowledged that Mr. Todd's sons, William and Eric, had filed a motion to intervene in the action under Civ.R. 24, and that "various

disputes" had arisen between them and Ms. Todd over the administration of Mr. Todd's estate, the separation agreement, and the ownership of the Brentwood property. *Id.* at ¶ 60-62. The complaint alleged William and Eric had "continue[d] to unlawfully use, possess, and reside" at the Brentwood property after Mr. Todd's death, "despite being instructed" otherwise by Ms. Todd. *Id.* at ¶ 73.

{¶ 12} On February 26, 2018, Huntington National Bank filed a foreclosure action seeking the sale of the Brentwood property in the Franklin County Court of Common Pleas. *Huntington Nat'l Bank v. Todd*, Case No. 18-cv-1738.

{¶ 13} William and Eric Todd renewed their motion to intervene on February 27, 2018. Mr. Epling, as administrator of Mr. Todd's estate, filed an answer on April 5, 2018, and did not assert any counterclaims against Ms. Todd.

{¶ 14} On June 28, 2018, the probate court granted the motion to intervene in part and denied it in part. The court found that the trust had "an interest in actions against the estate" because it was the sole beneficiary of Mr. Todd's will, and its trustee, William A. Todd, was therefore entitled to intervene. (June 28, 2018 Mag.'s Order at 2.) However, William and Eric were not entitled to intervene as beneficiaries of the trust. *Id.* The interests of Ms. Todd and the trust were at odds because each had interests "in obtaining the largest share of the estate possible." *Id.* As the estate's administrator, Mr. Epling was properly named as a defendant, but he had "a duty of fiduciary loyalty" to "beneficiaries with competing interests," the trust and Ms. Todd. *Id.* at 3.

{¶ 15} The Trustee filed an answer with counterclaims on July 5, 2018. The answer generally denied Ms. Todd's allegation that they had no right to the Brentwood property, alleged that the separation agreement was enforceable, and alleged that Ms. Todd's actions during the marriage and after Mr. Todd's death had "ratified the terms" of the separation agreement and "constitute[d] a waiver" that it was "invalid or unenforceable." (July 5, 2018 Answer at 17-18.) The answer presented five counterclaims. The first two sought declaratory judgments affirming that both the separation agreement and a prenuptial agreement entered into by Mr. and Ms. Todd were valid and enforceable. *Id.* at 18-19. In addition, a counterclaim for specific performance sought an order requiring that Ms. Todd transfer the Brentwood property to Mr. Todd's estate, a counterclaim for unjust enrichment seeking restitution for an amount in excess of $30,000 that Mr. Todd had allegedly paid to

Ms. Todd, and a counterclaim for quiet title declaring that "title exists" to the Brentwood property in favor of Mr. Todd's estate. *Id*. at 19-21.

{¶ 16} A probate court magistrate conducted a trial on Ms. Todd's claims and the Trustee's counterclaims on December 19 and 20, 2019. The magistrate's findings of fact, which the probate court adopted, have largely been recounted. Additionally, the magistrate found that both Mr. and Ms. Todd had been "represented by counsel during the negotiation of the Separation Agreement," and that she had "had the opportunity to discuss the final version of the Separation Agreement with her attorney prior to signing but declined to." (Mar. 11, 2020 Mag.'s Decision at 6.) The magistrate also found that although Mr. Todd had failed to pay the entire $30,000 amount promised for the Brentwood property by the promised deadline, Ms. Todd had "accepted payments made by [him] after the deadline and credited those payments to the amount owed." *Id*. The magistrate's final findings were that Ms. Todd, the Trustee, and Mr. Epling in his capacity as the estate's administrator had "signed a mediation agreement which required 2417 Brentwood be sold and the assets be escrowed with the distribution to be determined at a later date" on April 4, 2019, and that the Brentwood property had subsequently been sold. *Id*. at 7.

{¶ 17} The magistrate concluded that "the terms of the Separation Agreement were fair, reasonable, and just," and that no evidence supported Ms. Todd's assertion that she had "involuntarily" signed the agreement under duress. *Id*. at 8-9. The magistrate stressed that Ms. Todd had "negotiated the contract with the assistance of counsel," and "chose not" to discuss its final version with counsel before signing it. *Id*. at 9. Although Mr. Todd and Ms. Todd had not divorced before his death, because the separation agreement contained a "preservation clause stipulating that the terms of the agreement would remain in effect should the divorce action be dismissed," the agreement had "survived the dismissal of the divorce action." *Id*. With regard to the Brentwood property, the magistrate concluded:

> Decedent breached the terms of the Separation [Agreement] by failing to timely pay Kathryn $30,000.00 to transfer the deed to 2417 Brentwood. However, Kathryn allowed Decedent to cure the breach by accepting late, partial payments and attributing those payments to the $30,000.00 owed. Kathryn also testified at trial that had Decedent ever paid the full amount, she would have complied with the Separation Agreement and transferred the deed to Decedent. Further, both Decedent and Kathryn continued to act as if the Separation

Agreement were in place in terms of health insurance and Athletic Club membership. Based on ratification by Kathryn's actions, the Separation Agreement is not invalidated for failure to timely pay the $30,000.00. However, the estate shall be required to pay Kathryn the remaining $5,000.00 owed.

Upon careful review and for the above reasons, the Separation Agreement dated September 23, 2011 is a valid and fully enforceable contract between Decedent and Kathryn.

*Id.* at 9-10.

{¶ 18} The magistrate recommended that Ms. Todd's "complaint to set aside the separation agreement be DENIED and that William A. Todd as Trustee's [counterclaim] for declaratory judgment to uphold the validity of the separation agreement be GRANTED," and that the remaining amount owed to Ms. Todd be "paid from . . . the real estate sale" of the Brentwood property, with the remainder to Mr. Todd's estate. *Id.* at 10.

{¶ 19} Ms. Todd filed objections, but the probate court overruled them and adopted the magistrate's decision "subject to the modification to correct all references to the decedent's payments of $25,000 to [Ms. Todd] to show that he instead paid $20,000 to [her] prior to his death." (Mar. 11, 2021 Jgmt. Entry at 5.) Ms. Todd appealed the probate court's judgment, but later voluntarily dismissed the appeal. (Sept. 29, 2021 Journal Entry of Dismissal.)

{¶ 20} The Trustee first raised the issue of attorney fees under the separation agreement in an application filed on November 27, 2019, arguing that if he prevailed, "further proceedings" would be necessary after judgment. Eventually, Mr. Epling, as administrator, also requested fees, and the magistrate held a hearing to take evidence on the fee issued on March 11 and 17, 2022.

{¶ 21} Mr. Epling sought $30,857.37 in attorney fees, while the Trustee sought $394,396.90. (Feb. 23, 2023 Mag.'s Decision at 5; June 15, 2022 Pl.'s Mot. to Strike Def. Trustee's Submission of Final Fee & Cost Invoicing.) After hearing two days of testimony and reviewing extensive briefing on the issue, the magistrate awarded Administrator Epling the total amount of fees he sought and denied the Trustee's request altogether. (Feb. 23, 2023 Mag.'s Decision at 12.)

{¶ 22} The magistrate concluded that the Trustee was not entitled to attorney fees under the separation agreement because the Trust was not an intended third-party

beneficiary of the agreement. *Id.* at 8. The magistrate reasoned that it was "impossible" that the parties to the separation agreement could have "intended to provide a benefit to the Trust" because it was "not named" in the agreement and did not exist until "almost six years after the Separation Agreement was signed." *Id.* The magistrate found "[n]o evidence" that the separation agreement "was intended as part of Decedent's larger estate plan," and that Mr. Todd had "wanted the benefit of the Separation Agreement for himself." *Id.* "There is simply insufficient evidence to find that the Decedent entered into the Separation Agreement for the benefit of any future heirs or designees." *Id.* In addition, the magistrate concluded that the Trustee was not entitled to attorney fees because of Ms. Todd's alleged bad faith:[2]

> Further, the court finds that both [Ms. Todd] and the Trustee are equally at fault for the contentious nature of these proceedings. While both parties actively and zealously argued their positions, the court does not find that EITHER party presented sufficient evidence of bad faith or vexatious actions such that an award of attorney fees should be granted.

*Id.* at 10.

**{¶ 23}** The magistrate also found:

> While the actions of [Ms. Todd] and the Trustee throughout this litigation were highly contentious and adversarial, the court finds both parties' actions and arguments equally prolonged the litigation, and insufficient evidence of actual malice and bad faith was presented to substantiate the requested finding [of] bad faith.

*Id.* at 5.

**{¶ 24}** The magistrate made an alternative finding that, even if Ms. Todd "were responsible for attorney fees owed to the Trustee," the amount that the Trustee sought was not "justified under Prof.Cond. 1.5(a)(4)" because it so far exceeded the "maximum benefit" that the trust might have recovered. *Id.* at 10. The magistrate did conclude, however, that Mr. Epling was entitled to the fee award he sought because, as the administrator of Mr. Todd's estate, he stood "in the place" of Mr. Todd as "a party to the Separation Agreement,

---

[2] The magistrate first states that "the court does not need to rule on whether [Ms. Todd] acted in bad faith during this litigation because the Trustee *chose* to intervene," but in the next paragraph makes the ruling just described as unnecessary. (Emphasis sic.) (Feb. 23, 2023 Mag.'s Decision at 10.)

granting him the authority to assert a claim for fees" under its enforcement provision. *Id.* at 11.

{¶ 25} The Trustee filed objections to the magistrate's decision, but the probate court overruled them, finding that "the magistrate's reasoning appears sound." (Mar. 12, 2024 Jgmt. Entry at 4.) According to the probate court, "it was the decedent, not his trust, who was an original party to the [Separation] Agreement," so Mr. Todd's "estate, not the beneficiary of the estate, is the direct successor to the decedent's interest in the rights and obligations under the Agreement." *Id.* Because the administrator "remained the proper party in interest," even after the Trustee was allowed to intervene, only the administrator was entitled to attorney fees under the agreement's enforcement provision. *Id.* Thus, the probate court concluded that the "American rule . . . control[s] the trustee's ability to recover fees," but found that no party had "acted with the sort of bad faith to implicate the equitable exception to the American rule." *Id.*

{¶ 26} The Trustee had also argued that he was entitled to seek attorney fees under the separation agreement because he had statutory standing as a fiduciary under R.C. 2107.46 to file counterclaims against Ms. Todd after the administrator had failed to. Although the Trustee's objections pointed out the magistrate's failure to consider this argument, the probate court found the oversight to be immaterial because the administrator's "successful defense of the suit" obviated the need for the Trustee's participation in the litigation. *Id.* at 5.

{¶ 27} Finally, the probate court emphasized that "even if the trustee had any right to enforce the [Separation] Agreement," it only allowed "for an award of *reasonable* attorney fees." (Emphasis sic.) *Id.* The court was "not persuaded that attorney fees approaching $400,000.00, which so drastically overshadow the maximum pecuniary benefit which litigation could bring the trust, are by any means reasonable or permissible under the Rules of Professional Conduct." *Id.* at 5-6. Accordingly, the probate court adopted the magistrate's decision, denied the Trustee's application for attorney fees, and awarded them to the administrator. *Id.* at 6.

{¶ 28} The Trustee has appealed and asserts the following assignments of error:

> I. The Probate Court erred when it concluded that Intervenor-Appellant William A. Todd as Trustee * * * had no standing (either as an intended third-party beneficiary under the

common law or by statute) to enforce the attorney fee provision of the Separation Agreement.

II. The Probate Court erred when it concluded that there was no basis for Appellant to recover attorney fees under the bad faith exception to the American Rule.

III. The Probate Court erred when it adopted an alternative conclusion that—even if there was standing, or even if the bad faith exception were implicated—the total of all requested fees was unreasonable without conducting a lodestar analysis or considering whether any portion of the total was reasonable and without providing reasons in support of its determination.

IV. The Probate Court erred when it did not allow Appellant to refresh witness recollection with a voicemail message that the witness had received and the Probate Court did not allow a proffer of the voicemail with the witness.

V. The Probate Court erred when it did not grant Appellant's motion to amend his pleading to add explicit allegations that he had standing pursuant to R.C. 2107.46 to pursue the counterclaims he pled against Appellee.

## II.  Analysis

{¶ 29} Because our discussion will resolve this appeal by addressing and overruling the first two assignments of error, the third, fourth, and fifth assignments of error will be overruled as moot.

### A.  First Assignment of Error

{¶ 30} In the first assignment of error, the Trustee argues that the probate court erred when it concluded that he was not a third-party beneficiary of the Separation Agreement and therefore not entitled to seek attorney fees under its enforcement provision. (Brief of Appellant at 35-38.)  He argues that not only Mr. Todd himself, but, by the agreement's express terms, his "heirs, executors, administrators, next of kin and assigns" were all intended to benefit and be bound by it, and that the Trust is both an heir an assign. *Id.* at 39-40.  In response, Ms. Todd argues that the language the Trustee points to was only a "standard 'saving' clause" that simply "affirm[ed] the force and effect of the Separation Agreement in the event that an action to terminate the marriage was filed and withdrawn," but did not confer a benefit on the stakeholders it references as the law of third-party

beneficiaries requires. (Brief of Appellee at 17-18.) Because this assignment of error concerns the interpretation of contractual language, our review is de novo. *E.g.*, *Gatling Ohio, LLC v. Allegheny Energy Supply Co., LLC*, 10th Dist. No. 17AP-188, 2018-Ohio-3636, ¶ 12 (stating that "a de novo standard of review applies to matters of law, including the interpretation and construction of written contracts," under which "the court of appeals gives no deference to a trial court's interpretation of legal issues"). (Citations omitted.)

{¶ 31} In *Hill v. Sonitrol of Southwestern Ohio*, 36 Ohio St.3d 36, 40 (1988), the Supreme Court of Ohio adopted the following definition of a third-party beneficiary from the Restatement of the Law 2d, Contracts, Section 302 at 439-40 (1981):

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

{¶ 32} The "test used to determine whether a third party is an intended or incidental beneficiary" is the "intent to benefit" test, adopted from *Norfolk & W. Co. v. United States*, 641 F.2d 1201 (6th Cir.1980). *Hill* at 40. Under this test, if a promisee "intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Norfolk* at 1208. Conversely, "[i]f the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary', who has no enforceable rights under the contract." *Id.*

{¶ 33} "Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 12, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). "Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Id.* Unless unclear or ambiguous requires extrinsic evidence as an aid to interpret

meaning, "the parties' intention to benefit a third party will be found in the language of the agreement." *Id.*

{¶ 34} In this case, Mr. Todd and Ms. Todd expressly stated their intent with regard to certain third parties in the "Binding Effect" provision of the Separation Agreement:

> The parties agree that if an action for Dissolution of Marriage, Divorce or Legal Separation is hereafter filed and for any reason is withdrawn or dismissed, it is intended by the parties that this Agreement shall, nonetheless, remain in full force and effect and be binding upon both parties, their heirs, executors, administrators, next of kin and assigns.

(Separation Agreement at 9.)

{¶ 35} First, we note that the apparent condition precedent stating "if an action for Dissolution of Marriage, Divorce or Legal Separation is hereafter filed and for any reason is withdrawn or dismissed" did occur, as the parties dismissed their divorce action. (Mar. 11, 2020 Mag.'s Decision at 6 (stating finding of fact that parties had dismissed pending divorce action).) Upon fulfillment of the condition, the parties "intended" that the agreement "remain in full force and effect." This specific reference to what was "intended by the parties" also stated that the agreement was to "be binding" not only upon Mr. Todd and Ms. Todd, but also upon "their heirs, executors, administrators, next of kin and assigns." *Id.* at 5-6. The provision could not be clearer as to the parties' intent to not only be bound by the separation agreement even if they did not divorce, but to extend that obligation as well to the listed third parties.[3] Furthermore, because "there must be a complete reciprocity of obligation, benefit, and effect arising from the agreement, according to the full extent of the intention of the parties, otherwise it will not be binding on either," a party or one of the mentioned third parties enjoyed a reciprocal benefit upon the other's performance. *See Gratz v. Gratz*, 4 Rawle 411, 435 (Pa.1834) (describing "a rule particularly applicable to agreements"); *see also Hepburn v. Dubois*, 37 U.S. 345, 374 (1838) (quoting *Gratz*). Because the parties intended for any of the listed third parties to be bound the agreement, they intended for them to benefit from it as well, satisfying *Norfolk*'s "intent to benefit" test.

---

[3] The magistrate's conclusion that "[t]here is simply insufficient evidence to find that the Decedent entered into the Separation Agreement for the benefit of any future heirs or designees" can only be explained by the decision's failure to address the Binding Effect provision or its language. (Feb. 23, 2023 Mag.'s Decision at 8.)

{¶ 36} The question that therefore arises is whether the Trustee qualifies as one of the named third parties, namely, an "heir" or "assign." "In its technical sense, the term 'heirs' embraces those persons who take the estate of an intestate under the statute of descent and distribution, and in the event such statute designates the widow, she takes as an heir." *Holt v. Miller*, 133 Ohio St. 418 (1938), paragraph three of the syllabus. *See also Boulger v. Evans*, 54 Ohio St.2d 371, 374 (1978) (citing *Holt*'s definition of heir). The first definition presented in the Black's Law Dictionary entry for "heir" reflects the technical sense of the term described in *Holt*: "Someone who, under the laws of intestacy, is entitled to receive an intestate decedent's property." *Black's Law Dictionary* 839 (10th Ed.2014) However, even in a will, use of the term "is flexible and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will and the circumstances under which it was made." *Cultice v. Mills*, 97 Ohio St. 112 (1918), paragraph one of the syllabus. Avoidance of any technical meaning where the document is a run-of-the-mill contract such as the parties' separation agreement is favored because "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 245-46 (1978). "The intent of the contracting parties must be determined from the term 'heir' or 'heirs' considered in context with the provisions of the contract and under the circumstances in which the term was used." *Barnecut v. Barnecut*, 3 Ohio App.2d 132, 138 (5th Dist.1964). Black's second definition of "heir," "a person who inherits real or personal property, whether by will or by intestate succession," reflects a common understanding of the term. *Black's Law Dictionary* 839 (10th Ed.2014). When "heir" is understood in this sense, the Trustee qualifies, as it was the only named devisee of Mr. Todd's will.

{¶ 37} As for "assign," Black's considers it equivalent to "assignee," and defines it as "[o]ne to whose property rights are transferred by another" with the following caveat:

> Use of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity. Courts recognize the protean nature of the term and are therefore often forced to look to the intent of the assignor and assignee in making the assignment—rather than to the formality of the use of the term *assignee*—in defining rights and responsibilities.

*Id.* at 142.

{¶ 38} The relevant definition of assign is "[t]o convey in full; to transfer (rights or property . . . ." *Id.* Given the separation agreement's unequivocal assertion that it "remain in full force and effect and be binding upon" the third parties listed, including assigns, the parties intended for all rights and responsibilities arising under it be fully alienable.

{¶ 39} Recall that at the time of Mr. Todd's death, the parties had not fully performed under the separation agreement. Mr. Todd had not paid $10,000 of the amount promised to Ms. Todd for the Brentwood property, and she had not yet signed the quitclaim deed to it that she had promised to sign upon receipt of the funds. According to Ms. Todd's testimony, she refused to his plea to accept the funds, which would have completed the transaction, because she also wanted Mr. Todd to agree to file a dissolution. (Aug. 8, 2019 Tr. at 88-89.) Under these circumstances, either party had plausible grounds for bringing a breach of contract against the other. The proper term for such a "right to bring an action in tort and in contract" is a chose in action. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, ¶ 20.

{¶ 40} "A chose in action is personalty which, unlike real property, passes on death to the holder's executor." *In re Estate of Ray*, 6th Dist. No. WD-02-049, 2003-Ohio-2001, ¶ 13, citing *In re Estate of Wreede*, 106 Ohio App. 324, 331 (3d Dist.1958). Thus, Mr. Todd's death did not extinguish his right to sue under the separation agreement, which, as a chose in action, became part of his estate. *See Burns v. Daily*, 114 Ohio App.3d 693, 704 (11th Dist.1996) (decedent's possible claims against attorney to recover "excessive attorney's fees" based "on a theory of breach of contract, breach of fiduciary duty, money had and received, an accounting, conversion, fraudulent misrepresentation, or the like . . . constituted a chose-in-action, which she held as personal property," and "passed to her executor," who had the duty to "reduc[e] the chose in action to a money judgment"). Because "[i]t is permissible to assign a chose in action," the right vested as well in the Trustee, as the separation agreement mandated when it bound Mr. Todd's heirs and assigns. *Leber v. Buckeye Union Ins. Co.*, 125 Ohio App.3d 321, 332 (6th Dist.1997), citing *Crawford v. Chapman*, 17 Ohio 449 (1848). Mr. Todd's will independently accomplished the same objective when it devised "[a]ll the rest and residue of the property, real or personal, of every kind and description, wheresoever located, which I may own or have the

right to dispose of" to the Trustee "to be held and disposed of" under the Trust. (Ex. K., Feb. 13, 2018 First Am. Compl.)

{¶ 41} If Mr. Todd's right to pursue a breach of contract claim survived as a chose in action, so too did his right to seek attorney fees under the "enforcement" provision. Thus, whether the Trustee is entitled attorney fees under the separation agreement is dependent upon whether the terms of that provision were satisfied. Again, that provision states:

> If either Husband or Wife defaults on the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

(Separation Agreement at 9.)

{¶ 42} When considering the requirements expressed above in light of the events of this litigation, we cannot conclude that the Trustee's participation satisfied the conditions for awarding attorney fees. To merit award of "expenses, including attorney fees," the non-prevailing party must be "found to be in default" of the separation agreement, and the agreement itself must have been "enforce[ed]." Although the Trustee brought a number of counterclaims premised on the theory that Ms. Todd had defaulted in her obligation to transfer the Brentwood property, including a claim for specific performance to have its title transferred and a quite title action declaring the estate its "rightful owner," in the end, the Trustee did not prevail on any of these claims. (*Compare* July 5, 2018 Answer at 21 *with* Mar. 11, 2020 Mag.'s Decision & Mar. 11, 2021 Jgmt. Entry.) The only counterclaim on which the probate court found in favor of the Trustee was the declaratory judgment claim, but all that accomplished was a declaration that the separation agreement was valid. (Mar. 11, 2020 Mag.'s Decision at 10.) The disputes that might have served as the basis for a finding of default occurred in the court of common pleas, where the parties litigated their dispute over the Brentwood property during the foreclosure action, but that action was resolved by mediation. Finally, the probate court's order to disperse the final amount due to Ms. Todd under the separation agreement for the Brentwood property cannot be read as a finding by the probate court that she defaulted under it, only that she was still due that amount. However difficult the course of this litigation before is conclusion, an award of

attorney fees depended on a party being "found to be in default," and that did not occur in the probate court. Accordingly, the probate court did not ultimately err when it denied the Trustee's application attorney fees under this provision. The first assignment of error is overruled.[4]

### B. Second Assignment of Error

{¶ 43} In the second assignment of error, the Trustee argues that the probate court abused its discretion by concluding that he was not entitled to attorney fees on the basis of bad faith. He points to emails between Ms. Todd and her brother-in-law as evidence of her bad faith because they show that she "intentionally drove up costs and laughed about it," "lied," and "engaged in unlawful self-help efforts." (Brief of Appellant at 50.)

{¶ 44} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7, citing *Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32 (1987) and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377 (1927). There are three exceptions to the rule, which allow for an award of attorney fees based on statute, a fee-shifting agreement, "or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant." *Id.,* citing *Pegan v. Crawmer*, 79 Ohio St.3d 155 (1997). A party "may be entitled to recover attorney fees based on the exception to the American Rule" if it can show that the opposing party "acted in bad faith, wantonly, obdurately, vexatiously, or for oppressive reasons." *Kemp, Schaeffer & Rowe Co., L.P.A. v. Frecker*, 70 Ohio App.3d 493, 496-97 (10th Dist.1990) (reversing and remanding where trial court failed to hold evidentiary hearing to determine whether appellee had acted in bad faith). "A trial court's determination in regard to an award of attorney fees is generally reviewed under the abuse of discretion standard." *Whitt Sturtevant, LLP v. NC Plaza LLC*, 10th Dist. No. 14AP-919, 2015-Ohio-3976, ¶ 87, citing *Miller v. Grimsley*, 10th Dist. No. 09AP-660, 2011-Ohio-6049.

{¶ 45} In this case, the Trustee's motion for attorney fees prompted the magistrate to hold a hearing over two days. Multiple witness, including Ms. Todd and Mr. Epling,

---

[4] Having recognized the Trustee's status as a third-party beneficiary and holding a chose in action under the separation agreement, it is unnecessary to discuss the alternative basis for its enforcement arising from his standing as a fiduciary under R.C. 2107.46.

testified, and the magistrate reviewed a voluminous record of exhibits. The magistrate ultimately concluded that neither "party presented sufficient evidence of bad faith or vexatious actions such that an award of attorney fees should be granted." (Feb. 23, 2023 Mag.'s Decision at 10.) The magistrate acknowledged the "highly contentious and adversarial" actions of Ms. Todd and the Trustee, but ultimately found that "both parties' actions and arguments equally prolonged the litigation" with "insufficient evidence of actual malice and bad faith" to justify any fee award. *Id.* at 5. We acknowledge the questionable tenor of the emails the Trustee cites, but in the end, defer to the magistrate's evidentiary findings. The magistrate evaluated the witnesses' demeanor during their testimony, examined the exhibits presented, and ultimately concluded that the conduct of both parties had the effect of delaying the litigation. The Trustee has not demonstrated a flaw in the magistrate's reasoning that amounts to an abuse of discretion. Accordingly, the second assignment of error is overruled.

## III. Conclusion

{¶ 46} Because the resolution of the first two assignments of error precludes the award of attorney fees to the Trustee on any grounds, the remaining assignments of error are moot and accordingly overruled. Having overruled all assignments of error, we affirm the judgment of the Franklin County Probate Court.

*Judgment affirmed.*

LUPER SCHUSTER and BEATTY BLUNT, JJ., concur.

_____